Wesley J. Farrell*
FARRELL LEGAL
1221 Brickell Avenue Suite 900
Miami, FL 33130
wesfarrell@floridaattorney.com

Michael F. Ram (SBN 104805)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone:    (415) 358-6913
Facsimile:    (415) 358-6923
Email: mram@forthepeople.com

John A .Yanchunis*
Ronald Podolny*
Anthony Arzola*
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 North Franklin Street, 7th Floor
Tampa, FL  33602
Phone: (813) 275-5272
Fax: (813) 222-4736
jyanchunis@forthepeople.com
ronald.podolny@forthepeople.com
aarzola@forthepeople.com

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAMES WILLIAMS**, **on behalf of himself and others similarly situated,**<br><br>                                Plaintiffs,<br><br>v.<br><br>**VISA, INC.,**<br><br>                                Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff James Williams ("Williams"), individually and on behalf of the Class defined below of similarly situated persons, allege the following against Visa, Inc. ("Visa" or "Defendant") based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation by Plaintiff's counsel and review of public documents as to all other matters:

## SUMMARY OF THE CASE

1.      This case arises from the unlawful retention by Visa—one of the largest payment card services companies in the world— of a portion of surcharges unlawfully imposed by merchants on consumers who use debit cards to pay for everyday transactions.  By failing to

enforce its own contracts with Acquirer banks who enable merchants to accept Visa-branded debit cards, Visa ensures that it receives a portion of such surcharges, in the form of "debit assessment fees".  Visa is not entitled to these funds and ought to return them to its debit card holders.

2.      This Class Action Complaint is filed on behalf of all affected persons in the United States who were charged a surcharge when using a Visa-branded debit card to engage in transactions with U.S.-based merchants. Plaintiff and Class Members seek compensation for the harm suffered or, in the alternative, the return of Visa's unlawful profits derived from debit card surcharges.  Plaintiff and Class Members also seek injunctive relief to prohibit Visa from profiting from unlawfully imposed debit card surcharges.  They also seek an injunction to mandate Visa to enforce its own rules and contractual terms which prohibit the imposition of debit card surcharges.

## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of Class Members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

4.      This Court has jurisdiction over Defendant because Defendant  has availed itself of the rights and benefits of the state  of California by engaging in activities including (i) directly and/or through its parent companies, affiliates and/or agents providing services throughout the United States in this judicial district and abroad; (ii) conducting substantial business in this forum; (iii) maintaining its  headquarters in California; and (iv) designing, planning, orchestrating and/or perpetrating tortious acts in and from California.

5.    Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant operates in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

**A.  Plaintiff James Williams**

6.    Plaintiff Williams is an adult individual and citizen of South Carolina.

**B.  Defendant Visa, Inc.**

7.    Defendant Visa is a corporation with its principal place of business located in 900 Metro Center Boulevard, Foster City, CA 94404.  Visa is a multinational corporation that facilitates electronic payments, most commonly through Visa-branded credit cards, debit cards and prepaid cards.

## FACTUAL ALLEGATIONS

**A.  Defendant's Business**

8.    Defendant Visa is a California-based digital payment company that "facilitate[es] transactions between consumers, merchants, financial institutions and government entities across more than 200 countries and territories."[1]

9.    Visa claims that one of its purposes is to "[g]ive consumers secure and convenient ways to pay and be paid."[2]  Visa enables electronic payments mostly through Visa-branded credit, debit, and prepaid card products.[3]

**B.  Relevant Terminology**

---

[1]    *Visa      Fact      Sheet*,      Visa,      Inc., https://corporate.visa.com/content/dam/VCOM/corporate/documents/about-visa-factsheet.pdf (last accessed on Sept. 4, 2024).
[2] *Id.*
[3] *Visa, Inc. (V)*, Yahoo, https://sg.finance.yahoo.com/quote/V/profile/ (last accessed on Sept. 4, 2024).

10.     As used in this Complaint, the following terms have meanings defined below:

a) A "merchant" is any business that accepts payments from customers for goods or services.[4]

b) A "debit card" is a payment card that allows a consumer cardholder to engage in transactions by having money drawn directly from the cardholder's checking account. Debit cards can also be used to withdraw or deposit cash at automatic teller machines ("ATM").[5]

c) "Payment processors" are vendors that facilitate electronic transactions—including payments made with debit cards—between merchants and their customers.[6] Payment processors allow a merchant to accept several forms of payment and facilitate the transfer of funds from the customer's account to the merchant's account.[7]

d) "Issuers" are financial institutions that provide consumers with payment cards.[8] In addition to issuing payment cards, issuers approve transactions, generate bills and statements, manage interest rates and fees relating to issued

---

[4] *Merchant services: What they are and how to get started*, Stripe (June 5, 2024), https://stripe.com/resources/more/merchant-services#:~:text=In%20the%20merchant%20services%20space,third%2Dparty%20merchant%20service%20providers. (last accessed Oct. 15, 2024)

[5] Margarette Burnette, *What is a Debit Card and How Does it Work?*, NerdWallet (Sept. 19, 2023), https://www.nerdwallet.com/article/banking/what-is-a-debit-card (last accessed Oct. 15, 2024)

[6] *Payment processors 101: What they are and how they work*, Stripe (Sept. 1, 2023), https://stripe.com/resources/more/payment-processors-101 (last accessed Oct. 15, 2024)

[7] *Id.*

[8] *Debit Networks 101*, Fiserv (2023), https://www.fiserv.com/content/dam/fiserv-ent/final-files/marketing-collateral/white-papers/debit-networks-101-white-paper-1023.pdf (last accessed Oct. 15, 2024)

payment cards, monitor for payment card fraud, and manage rewards and loyalty programs.[9]

e) "Acquirer banks" (alternatively, "acquirers") are financial institutions that work with merchants to process card transactions. Acquirers act as intermediaries between merchants and issuers during transactions. To make money, acquirers charge merchants a fee, usually a percentage of the transaction value or a fixed rate per transaction.[10]

**How a Debit Card Transaction Works**

11.    Each time a cardholder uses a debit card to pay a merchant for goods or services, the transaction is completed through several steps.



12.    First, when a cardholder uses his or her debit card for payment, the transaction goes from the payment processor to the acquirer.[11]

---

[9] *Card issuing 101: What it is and what businesses need to know*, Stripe (Oct. 25, 2023), https://stripe.com/resources/more/card-issuing-101#:~:text=A%20card%20issuer%20is%20a,bear%20the%20associated%20financial%20risks. (last accessed Oct. 15, 2024).

[10] *Id.*

[11] Matt Rej, *Acquiring Banks vs Issuing Banks in Credit Card Processing*, Merchant Cost Consulting (July 22, 2023), https://merchantcostconsulting.com/lower-credit-card-processing-fees/acquiring-banks-vs-issuing-banks-in-credit-card-processing/ (last accessed Oct. 15, 2024)

13.     Second, the acquirer routes the transaction through the payment card network – in this case, Visa - to the issuer.[12]

14.     Third, the issuer evaluates the cardholder's account to confirm the transaction and then takes funds from the cardholder's account.[13]

15.     Fourth, assuming the cardholder has adequate funds and the account is active, funds are then sent from the issuer to the acquirer.[14]

16.     Last, once the authorized transactions are settled, the Acquirer bank will accept the funds and place the money in the merchant's account, minus and applicable fees and service charges.[15]

**Debit assessment Fees and Visa's Assessment Fee Scheme**

17.     A debit assessment fee is a fee passed onto Visa when the merchant accepts payment from a consumer cardholder using a debit card marked with the payment card network's brand.[16]

18.     In respect of debit cards specifically, such fees constitute 0.13% of the gross transaction volume.[17]  Accordingly, Visa benefits directly if a merchant charges more for a given transaction.  The higher the price paid by a consumer to a merchant in a given debit

---

[12] Id.

[13] Id.

[14] Id.

[15] Id.

[16] Peter Voight, *Credit Card Assessment Fees: A Quick Merchant Guide*, Electronic Merchant Systems (Feb. 23, 2024), https://www.emscorporate.com/news/assessment-fees (last accessed Oct. 15, 2024)

[17] Id.

transaction, inclusive of any surcharges, the more that Visa receives as a "debit assessment fee."

**Visa's Rules Against Surcharging on Debit Card Transactions**

19.    Some merchants who accept electronic forms of payment impose upon cardholders a "surcharge," which is "an additional fee or charge that a merchant adds to a consumer's bill for using a particular form of payment."[18]   In the context of payment card transactions, merchants impose surcharges "to compensate for some of the cost of payment processing."[19]

20.    Under certain conditions, Visa permits merchants to apply surcharges on purchases made via *credit* card.[20]

21.    In contrast, Visa's rules prohibit U.S. merchants from imposing surcharges on purchases made using Visa-branded *debit* cards:

> **Can I assess a surcharge on purchases made using both credit and debit card?**
> ▪ No. [] U.S. merchants cannot surcharge purchases made using a Visa debit card or prepaid card.[21]

22.    Visa Rules also state that Visa prohibits merchants from imposing debit card surcharges ("No Surcharge Rule"), as follows:

> In the US Region or a US Territory: Merchants with Acceptance Devices that offer Cardholder choice for debit Transactions in the form of "credit" and "debit" buttons must ensure that both:

---

[18] *U.S. Merchant Surcharge Q and A*, Visa (Feb. 15, 2024), https://usa.visa.com/content/dam/VCOM/global/support-legal/documents/merchant-surcharging-qa-for-web.pdf (last accessed Oct. 15, 2024)

[19] Gabriela Jean, *Credit Card Surcharge Laws by State Explained*, LawPay (Mar. 1, 2024), https://www.lawpay.com/about/blog/credit-card-surcharge-rules/ (last accessed Oct. 15, 2024)

[20] *U.S. Merchant Surcharge Q and A*, Visa (Feb. 15, 2024), https://usa.visa.com/content/dam/VCOM/global/support-legal/documents/merchant-surcharging-qa-for-web.pdf (last accessed Oct. 15, 2024)

[21] Id.

- Debit Card Transactions are not assessed a Credit Card Surcharge
- It is made clear to the Cardholder that surcharges are not permitted on debit Transactions regardless of whether a Cardholder selects the "credit" or "debit" button.[22]

23.     Visa claims that it enforces the No Surcharge Rule, by imposing fines on its Acquirer banks, to verify that no surcharges are imposed on debit transactions:

> **Does Visa enforce its rules on surcharges to ensure they are applied correctly?**
> • Yes, Visa is actively enforcing its surcharge policy per the *Visa Core Rules and Visa Product and Services Rules* and state laws where permitted. Visa receives numerous consumer complaints and [has] a yearly mystery shopping by outside auditors. The Acquirers of merchants who are caught violating Visa's rules, face potential fines. Moreover, the acquirer of any merchant identified as surcharging improperly may be assessed an immediate US $1,000 fine.[23]

24.     Finally, Visa provides in its Rules that "[a] Member [i.e., merchant or Acquirer bank][24] that does not comply with the Visa Charter Documents or Visa Rules will be subject to non-compliance assessment."[25]

25.     Visa Rules mandate that each of its Acquirer banks "must have a Merchant Agreement with each of its Merchants to accept Visa Cards and, if applicable, Visa Electron Cards." Such agreements between Acquirer bank and merchant "must include language that requires the Merchant to do all of the following … Comply with the Visa Rules regarding use of

---

[22] Id. at pp. 386-387.

[23] Id.

[24] *Id*. at 63 ("Responsibility is assigned to a Member. For example: "A Merchant must…" means "An Acquirer must ensure that its Merchant…")

[25] Id. at p. 150.

the Visa-Owned Marks, Visa acceptance, Transaction processing […] Not knowingly submit any Transaction that is illegal or that the Merchant should have known was illegal."[26]

26.     Elsewhere, Visa states that "Visa governs its payment system, and *holds participants accountable* through the enforcement of its membership agreement, Bylaws, the Visa Rules and other applicable documents."[27]

**Visa Has Failed to Enforce its Policy and Contracts Against Debit Card Surcharging**

27.     On information and belief, the obligation to enforce the No Surcharge Rule is imposed on Visa's Acquirer banks through contracts entered into between Visa and its Acquirer banks.  It is also incorporated in the Visa Rules, at s. 1.5.2.1, which, by their own terms, apply to "Visa system participants". However, Visa does not enforce the No Surcharge Rule in a systematic or effective manner.

28.     Accordingly, despite Visa's No Surcharge Rule, merchants routinely impose such surcharges on consumers making purchases via debit card.  This practice is widespread and indiscriminate.  Visa knowingly permits it.

29.     As a result of Visa's failure to enforce the No Surcharge Rule, Visa profits from merchants' unlawful imposition of debit card surcharges, by collecting a "debit assessment fee", which, as described above, is collected on the *gross* transaction amount (i.e., including the surcharge).

**Plaintiff's Experience**

---

[26]     Visa    Rules,    at    s.    1.5.2.1    ("Merchant    Agreement"): https://usa.visa.com/content/dam/VCOM/download/about-visa/visa-rules-public.pdf

[27]     Visa Payment Facilitator and Marketplace Risk Guide, s. 3.2, emphasis added: https://usa.visa.com/content/dam/VCOM/regional/na/us/partner-with-us/documents/visa-payment-facilitator-and-marketplace-risk-guide.pdf

30.     Plaintiff Williams has been repeatedly charged unlawful debit surcharges when using his Visa-branded debit card.  In particular, on or about October 31, 2024, Williams used his Visa-branded debit card to purchase food and beverages at LJ's Par & Grill in Lexington, South Carolina.  Williams was charged a surcharge, in the amount of 3% of the transaction, in addition to the cost of food and beverage.

31.     On November 14, 2024, Williams used his Visa-branded debit card to purchase a gift certificate at OMG Nail Spa in Lexington, South Carolina.  Williams was charged a surcharge in the amount of 3% of the transaction, in addition to the cost of the gift certificate.

32.      Also on November 14, 2024, Williams used his Visa-branded debit card to purchase a 12-pack of beer at Lake Murray Liquors of Lexington, in Lexington, South Carolina.  Williams was charged a surcharge in the amount of 3% of the transaction, in addition to the cost of the beer.

33.     The surcharges imposed on Williams were not permitted according to Visa's own Rules, but was permitted to be imposed, and Visa benefitted from its imposition through the collection of the "debit assessment fee" on the gross transaction amount.

34.     On information and belief, the imposition of debit card surcharges is a widespread and routine practice among merchants accepting Visa-branded debit cards, of which Visa is aware and which Visa permits.

**Plaintiff and Class Members Suffered Damages**

35.     Through the unlawful imposition of surcharges on debit card payments, which Visa knowingly permits despite its own No Surcharge Rule, Plaintiff and Class Members have overpaid for goods and services.

36.     According to the Federal Reserve, in 2021, the volume of debit card transactions

constituted 4.55 trillion.[28]  Visa controls approximately 60% of the debit card market in the United States.[29]   Visa collects more than $7 billion per year in debit card processing fees.[30]   On information and belief, in the United States, in the United States, Visa earns more in revenue from its debit business than its credit business.  The annual volume of debit card transactions subject to unlawful surcharges, which on information and belief are routinely permitted by Visa, is therefore very substantial.

## CLASS ALLEGATIONS

37.    Plaintiff brings this class action individually and on behalf of all members of the following Nationwide Class of similarly situated persons pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2), (b)(3) and (c)(4) of the following class:

**Nationwide Class**

All persons residing in the United States who paid a surcharge when using a Visa-branded debit card in a transaction with a merchant located in the United States between 2010 and the present.

38.    Excluded from the class are Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, any entities in which Defendant has a controlling interest, as well as the judge(s) presiding over this matter and the clerks, judicial staff, and immediate family members of said judge(s).

39.    Plaintiff reserves the right to modify or amend the foregoing class definitions

---

[28] https://www.federalreserve.gov/paymentsystems/fr-payments-study.htm

[29]    https://www.statista.com/statistics/279469/market-share-of-credit-card-companies-in-the-united-states-by-purchase-volume/#:~:text=Visa's%20U.S.%20market%20share%20increased,percent%20actually%20having%20used%20one

[30]    https://www.npr.org/2024/09/24/nx-s1-5124657/justice-department-doj-visa-debit-card-antitrust-lawsuit

1    before the Court determines whether certification is appropriate.

2        40.    <u>Numerosity:</u> The members in the class are so numerous that joinder of all Class

3    Members in a single proceeding would be impracticable. As noted above, tens of millions of

4    individuals have used Visa debit cards to purchase goods or services from merchants in the United

5    States. Many of these purchasers paid surcharges imposed by merchants for paying with Visa debit

6    cards. A portion of these surcharges was passed on by the merchants and their Acquirer banks to

7

8    Visa in the form of a "debit assessment fee".

9        41.    <u>Commonality and Predominance:</u> Common questions of law and fact exist as to all

10    Class Members and predominate over any potential questions affecting only individual Class

11    Members. These common questions of law or fact include, *inter alia*:

12

13        a.    Whether Defendant engaged in the conduct alleged herein;

14        b.    Whether Plaintiff and Class Members were intended third-party

15            beneficiaries under agreements between Defendant and Acquirer banks;

16        c.    Whether allowing Plaintiff and Class Members to bring their own breach of

17            contract actions against Defendant is consistent with the objectives of the

18            agreements and the reasonable expectations of Defendant and its Acquirer

19            banks;

20        d.    Whether Plaintiff and Class Members were damaged by the alleged

21

22            breaches of contract between Defendant and Acquirer banks;

23        e.    Whether Plaintiff and Class Members conferred a benefit unto Defendant;

24        f.    Whether Defendant realized and retained a benefit conferred by Plaintiff

25            and Class Members; and

26        g.    Whether Defendant's retention of the benefit is unjust under the

27

28            circumstances.

42.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of himself and all other Class Members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

43.     Typicality: Plaintiff's claims are typical of the claims of the class. Plaintiff, like all proposed members of the Class, paid unlawful surcharges to merchants in respect of debit payments, which were, in part, passed on to Visa in the form of "debit assessment fees" to Visa. Plaintiff and Class Members were injured by the same wrongful acts, practices, and omissions committed by Defendant, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class Members.

44.     Adequacy: Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff is an adequate representative of the class and has no interests adverse to, or conflict with, the class he seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

45.     Superiority: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and all other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress from Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action

device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

46.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include those set forth in paragraph 41, above.

47.    Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the class as a whole.

48.    Finally, all members of the proposed class are readily ascertainable. Defendant has a record of each debit transaction processed over its network, and therefore can identify each of the Class Members.

## COUNT I
### BREACH OF THIRD-PARTY BENEFICIARY CONTRACT
**(On Behalf of Plaintiff and the Class)**

49.    Plaintiff restates and realleges paragraphs 1 through 48 above as if fully set forth herein.

50.    Visa entered into contracts with its Acquirer banks, in the form of the Visa Rules and additional documents, which included Visa's obligation to ensure that merchants who accept Visa-branded cards did not impose surcharges on debit card transactions.

51.    Such contracts were made expressly for the benefit of Plaintiff and Class Members, encouraging Visa debit cardholders to use their Visa debit cards when engaging in transactions with merchants.

52.     Thus, protection of Visa-branded debit cardholders from surcharges was the direct and primary objective of the contracting parties, and Plaintiff and Class Members were direct, express, and intended beneficiaries of such contracts.

53.     Visa knew that if it were to breach these contracts with its merchants, Plaintiff and Class Members would be harmed and suffer damages.

54.     Visa knowingly breached these contracts. As a result, Plaintiff and Class Members were affected when Visa failed to use reasonable measures to ensure that merchants accepting Visa-branded debit cards do not impose surcharges for the use of such cards.

55.     Plaintiff and Class Members were harmed as a direct and proximate result of Visa's failure to use reasonable measures to enforce Visa's own rules prohibiting merchants from imposing debit card surcharges on Plaintiff and Class Members.

56.     Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered due to Visa's breach of third-party beneficiary contracts and Visa's internal policies barring the imposition of debt card surcharges.

**COUNT II**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

57.     Plaintiff restates and realleges paragraphs 1 through 48 above as if fully set forth herein.

58.     This claim is asserted in the alternative to Count I above.

59.     Plaintiff and Class Members conferred a benefit onto Visa by paying merchants unlawful surcharges when using debit cards, a portion of which surcharges was passed on to Visa in the form of a "debit assessment fee" paid by merchants.

60.     Visa enriched itself by receiving a portion of the surcharges imposed by merchants upon Plaintiff and Class Members, in the form of "debit assessment fees." Instead of enforcing its

own rules and contracts with its Acquirer banks, and thus ensuring that merchants did not impose illegal surcharges on Plaintiff and Class Members in respect of debit cards transactions, Defendant deliberately chose to permit such practice, at the expense of Plaintiff and Class Members by turning a blind eye to merchants' illegal surcharges and pocketing a portion of such surcharges in the form of "debit assessment fees". Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to enforce its own rules and prevent merchants' imposition of illegal surcharges.

61.     Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant chose to allow Acquirer banks and their merchant clients to impose surcharges, which are unlawful under Defendant's own policies and contracts, upon Plaintiff and Class Members, and to retain a portion of these surcharges in the form of "debit assessment fee."

62.     Plaintiff and Class Members have no adequate remedy at law.

63.     As a direct and direct an proximate result of Visa's conduct, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the wrongful conduct of Visa and its associated merchants; (ii) loss of benefit of the bargain; (iii) future costs in terms of time, effort and money that will be expended to remunerate Plaintiff and Class Members the unlawful monies paid to Visa when using a Visa debit card to engage in transactions with merchants; and (iv) any nominal damages that may be awarded.

64.     Plaintiff and Class Members are entitled to restitution and/or damages from Visa and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Visa from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

65.     Plaintiff and Class Members may not have an adequate remedy at law against Visa, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**COUNT III**
**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE §17200, et seq**
**(On Behalf of Plaintiff and the Class)**

66.     Plaintiff restates and realleges paragraphs 1 through 48 above as if fully set forth herein.

67.     The California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, et seq. ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

68.     By reason of Defendant's failure to enforce the No Surcharge Rule and prevent merchants from imposing surcharge on Visa-branded debit card transactions, Defendant engaged in unfair business practices in violation of the UCL.

69.     Plaintiffs suffered injury in fact and lost money or property as a result of Defendant's alleged violations of the UCL.

70.     The acts, omissions, and conduct of Defendant as alleged herein constitute a "business practice" within the meaning of the UCL.

71.     Defendant's acts, omissions, and conduct violate the unfair prong of the UCL because Defendant's acts, omissions, and conduct, as alleged herein, offended public policy and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiffs and other Class Members. The gravity of Defendant's conduct outweighs any potential benefits attributable to such conduct and there were reasonably available alternatives to further Defendant's legitimate business interests, other than Defendants' conduct described herein.

72.     Defendant's failure to enforce the No Surcharge Rule, and its failure to prevent merchants from imposing surcharges on Visa-branded debit cards, despite Visa's own rules and statements which purport to prohibit such practice, constitutes an unfair business practice under the UCL. Defendant's conduct is unethical, unscrupulous, and substantially injurious to the Class.

**COUNT IV**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(On Behalf of Plaintiff and the Class)**

73.     Plaintiff restates and realleges paragraphs 1 through 48 above as if fully set forth herein.

74.     Plaintiffs pursue this claim under the *Federal Declaratory Judgment Act*, 28 U.S.C. § 2201.

75.     Defendant owes a duty to Plaintiff and the Class, in contract and/or in equity, that requires it to ensure that no surcharges are imposed on Visa-branded debit card payments.

76.     Defendant failed to fulfill its duty, and Plaintiffs and Class suffered harm as a result of the unlawful surcharges.

77.     Plaintiffs and Class Members are at risk of future harm due to continued lack of enforcement of Visa's own Rules and contracts in respect of debit card surcharging.

78.     Plaintiffs, therefore, seek a declaration that Defendant's existing conduct does not comply with its own Rules and contractual obligations in respect of debit card no-surcharge policy enforcement.

79.     Further, to ensure that the Defendant complies with its legal obligations and duties, Plaintiff and Class Members seek a mandatory injunction directing Defendant to adequately monitor and enforce compliance with its own no-surcharge rules and contractual obligations in respect of debit card payment, including but not limited to an Order:

a.     prohibiting Defendant from engaging in the wrongful and unlawful

acts described herein;

b.     requiring Defendant to monitor and enforce compliance with the No Surcharge Rule in respect of debit cards by merchants who accept Visa-branded cards;

c.     requiring Defendant to report to the Court six months following the judgment in this case, on the efforts it undertook to ensure that merchants who accept Visa-branded credit cards do not impose surcharges on payments made with these cards.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other members of the class, respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

A.     Certifying the class as requested herein, designating Plaintiff as the class representative, and appointing Plaintiff's counsel as Class Counsel;

B.     Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, nominal damages, restitution, and disgorgement;

C.     Awarding Plaintiff and the class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of himself and the Class, seeks appropriate injunctive relief designed to prevent Defendant from profiting from illegal surcharges paid by Plaintiff and Class Members for engaging in debit card transactions by banning merchants from charging such surcharges onto Visa debit cardholders and implementing best practices to monitor compliance with Visa's internal policies;

D.     Granting a mandatory injunction directing Defendant to adequately monitor and enforce compliance with its own no-surcharge rules and contractual obligations in respect of debit

card payment, including but not limited to an Order:

        a.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

        b.    requiring Defendant to monitor and enforce compliance with the No Surcharge Rule in respect of debit cards by merchants who accept Visa-branded cards;

        c.    requiring Defendant to report to the Court six months following the judgment in this case, on the efforts it undertook to ensure that merchants who accept Visa-branded credit cards do not impose surcharges on payments made with these cards.

    E.    Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

    F.    Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

    G.    Awarding Plaintiff and the Class such other favorable relief as allowable under law.

1

**JURY TRIAL DEMANDED**

2

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

3

4
    DATED: December 4, 2024                    Respectfully Submitted,

5

6
                                              /s/ *Michael F. Ram*

7

| Wesley J. Farrell* | Michael F. Ram (SBN 104805) |
|---|---|
| **FARRELL LEGAL** | **MORGAN & MORGAN** |
| 1221 Brickell Avenue Suite 900 | **COMPLEX LITIGATION GROUP** |
| Miami, FL 33130 | 711 Van Ness Avenue, Suite 500 |
| wesfarrell@floridaattorney.com | San Francisco, CA 94102 |
| | Telephone:     (415) 358-6913 |
| | Facsimile:     (415) 358-6923 |
| | Email: mram@forthepeople.com |
| | |
| | John A .Yanchunis* |
| | Ronald Podolny* |
| | Anthony Arzola* |
| | |
| | **MORGAN & MORGAN** |
| | **COMPLEX LITIGATION GROUP** |
| | 201 North Franklin Street, 7th Floor |
| | Tampa, FL  33602 |
| | Phone: (813) 275-5272 |
| | Fax: (813) 222-4736 |
| | jyanchunis@forthepeople.com |
| | ronald.podolny@forthepeople.com |
| | aarzola@forthepeople.com |

*Attorneys for the Plaintiff and Proposed Class*
*\*Pro Hac Vice application forthcoming*