SHARON D. MAYO (Bar No. 150469)
sharon.mayo@arnoldporter.com
ANDREW S. HANNEMANN (Bar No. 322400)
andrew.hannemann@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone:    415.471.3100
Facsimile:    415.471.3400

ANNE P. DAVIS (admitted *pro hac vice*)
anne.davis@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, D.C. 20001-3743
Telephone:    202.942.5000
Facsimile:    202.942.5999

Attorneys for Defendant
VISA INC.

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WILLIAMS, on behalf of himself and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VISA, INC.,<br><br>Defendant. | Case No.:  4:24-cv-08708-JST<br><br>**DEFENDANT VISA INC.'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:            May 1, 2025<br>Time:           2:00 p.m.<br>Courtroom:   Courtroom 6 - Second Floor<br>Judge:          Hon. Jon S. Tigar<br>Action Filed: Dec. 4, 2024 |

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 2

II.     BACKGROUND ....................................................................................................... 4

     A.      Debit Card Transactions and Applicable Visa Rules ................................. 4

     B.      Plaintiff's Claims ........................................................................................ 5

III.    LEGAL STANDARD ................................................................................................ 6

IV.     PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF A THIRD-
     PARTY BENEFICIARY CONTRACT (COUNT I) ............................................... 7

     A.      Plaintiff Does Not Allege Any Breach of a Contract by Visa ................... 8

     B.      Plaintiff is Not a Third-Party Beneficiary of Visa's Contracts .............. 10

V.      PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT
     (COUNT II) ............................................................................................................. 14

     A.      Plaintiff's Third-Party Beneficiary Breach of Contract Claim
           Precludes a Claim for Unjust Enrichment ............................................... 14

     B.      There Is No "Unjust" Retention of a Benefit By Visa ............................ 15

VI.     PLAINTIFF FAILS TO STATE A CLAIM UNDER THE CALIFORNIA
     UNFAIR COMPETITION LAW (COUNT III) .................................................... 16

VII.    PLAINTIFF FAILS TO STATE A CLAIM FOR DECLARATORY AND
     INJUNCTIVE RELIEF (COUNT IV) ................................................................... 21

VIII.   CONCLUSION........................................................................................................ 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ameron Intern. Corp. v. Am. Home Assur. Co.*,
   No. CV 11–1601 CAS, 2011 WL 2261195 (C.D. Cal. June 6, 2011) ........................................ 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................................... 7

*Balsam v. Tucows Inc.*,
   627 F.3d 1158 (9th Cir. 2010) .................................................................................................... 11

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc. ("CMA")*,
   94 Cal. App. 4th 151 (2001) ....................................................................................................... 15

*Cannon v. Wells Fargo Bank N.A.*,
   917 F. Supp. 2d 1025 (N.D. Cal. 2013) ...................................................................................... 18

*Chen v. Bank of Am., N.A.*,
   No. CV 19-6941-MWF-SK, 2019 WL 9633650 (C.D. Cal. Oct. 29, 2019) ............................... 20

*City of Oakland v. Oakland Raiders*,
   83 Cal. App. 5th 458 (2022) .................................................................................................. 14, 15

*City of Oakland v. Oakland Raiders*,
   No. 18-CV-07444-JCS, 2019 WL 3344624 (N.D. Cal. July 25, 2019) ...................................... 15

*Coronavirus Rep. v. Apple, Inc.*,
   85 F.4th 948 (9th Cir. 2023) ......................................................................................................... 8

*Daugherty v. Am. Honda Motor Co.*,
   144 Cal. App. 4th 824 (2006) ................................................................................................ 17, 19

*De Havilland v. FX Networks, LLC*,
   21 Cal. App. 5th 845 (2018) ....................................................................................................... 14

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ................................................................................................... 16

*Family Home & Fin. Ctr., Inc. v. Freddie Mac*,
   461 F. Supp. 2d 1188 (C.D. Cal. 2006) ...................................................................................... 17

*Gabriel v. Wells Fargo Bank, N.A.*,
   188 Cal. App. 4th 547 (2010) ....................................................................................................... 8

*Ghirardo v. Antonioli*,
   14 Cal. 4th 39 (1996) .................................................................................................................. 16

*Ginsberg v. Google Inc.*,
    586 F. Supp. 3d 998 (N.D. Cal. 2022) ................................................................. 18, 19

*Goonewardene v. ADP, LLC*,
    6 Cal. 5th 817 (2019) ..................................................................... 10, 11, 12, 13

*Guttmann v. Nissin Foods (U.S.A.) Co.*,
    No. C 15-00567 WHA, 2015 WL 4881073 (N.D. Cal. Aug. 14, 2015) ..................................... 21

*Imber-Gluck v. Google, Inc.*,
    No. 5:14-CV-01070-RMW, 2014 WL 3600506 (N.D. Cal. July 21, 2014) ............................... 19

*Iron Bridge Mortg. Fund, LLC v. Bank of Am., N.A.*,
    539 F. Supp. 3d 1030 (N.D. Cal. 2021) ......................................................... 10, 21, 22

*Karo v. San Diego Symphony Orchestra Ass'n*,
    762 F.2d 819 (9th Cir. 1985) ............................................................................... 11

*Kelly v. BP W. Coast Prods. LLC*,
    No. 2:14-CV-01507-KJM-CK, 2014 WL 7409220 (E.D. Cal. Dec. 30, 2014) .............. 17, 20, 21

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) .................................................................................. 7

*Kindred Studio Illustration & Design LLC v. Elec. Commc'n Tech., LLC*,
    No. CV 18-7661-GW(GJSx), 2018 WL 6985317 (C.D. Cal. Dec. 3, 2018) .............................. 20

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ................................................................................. 7

*Krystofiak v. BellRing Brands, Inc.*,
    737 F. Supp. 3d 782 (N.D. Cal. 2024) ..................................................................... 16

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ......................................................................................... 16

*LaBarbera v. Sec. Nat'l Ins. Co.*,
    86 Cal. App. 5th 1329 (2022) ................................................................................ 11

*Longest v. Green Tree Servicing LLC*,
    74 F. Supp. 3d 1289 (C.D. Cal. 2015) ....................................................................... 7

*Marina Tenants Ass'n v. Deauville Marina Dev. Co.*,
    181 Cal. App. 3d 122 (1986) .................................................................................. 14

*MH Pillars Ltd. v. Realini*,
    277 F. Supp. 3d 1077 (N.D. Cal. 2017) ..................................................................... 14

*MNG 2005, Inc. v. Paymentech, LLC*,
    No. 4:18-CV-01155-JAR, 2019 WL 3531949 (E.D. Mo. Aug. 2, 2019) .................................. 11

- iii -

*In re Nexus 6P Prods. Liab. Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018) ................................................................. 17, 20

*Ngo v. BMW of N. Am., LLC*,
    23 F.4th 942 (9th Cir. 2022) ........................................................................................ 10

*In re NVIDIA Corp. Sec. Litig.*,
    768 F.3d 1046 (9th Cir. 2014) ....................................................................................... 7

*Ohio v. Am. Express Co.*,
    585 U.S. 529 (2018) ..................................................................................................... 12

*Parziale v. HP, Inc.*,
    445 F. Supp. 3d 435 (N.D. Cal. 2020) ................................................................. 20, 21

*Prager University v. Google LLC*,
    85 Cal. App. 5th 1022 (2022) ........................................................................................ 9

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (1999) ........................................................................................ 17

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001), *amended on other grounds*, 275 F.3d 1187 (9th
    Cir. 2001) ...................................................................................................................... 7

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (2011) ............................................................................................... 17

*In re Verisign, Inc., Derivative Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ...................................................................... 10

*Young v. ByteDance Inc.*,
    No. 22-CV-01883-VC, 2023 WL 3484215 (N.D. Cal. May 15, 2023) ...................... 18

**Statutes**

Civ. Code § 1646 ................................................................................................................ 10

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 1, 6

## NOTICE OF MOTION AND MOTION TO DISMISS

### TO ALL INTERESTED PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT** Defendant Visa Inc. ("Visa") will and hereby does move to dismiss the Class Action Complaint ("Complaint") of Plaintiff James Williams ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6) with prejudice for failure to state a claim upon which relief can be granted.  Visa's Motion is scheduled to be heard on May 1, 2025, at 2:00 p.m., before the Honorable Jon S. Tigar of the United States District Court for the Northern District of California, located at Courtroom 6, Second Floor, 1301 Clay Street, Oakland, California 94612. Visa's Motion is based on this Notice of Motion and Motion to Dismiss, the Memorandum of Points and Authorities below, the Declaration of Sharon D. Mayo, any additional briefing, and any additional material that may be elicited at the hearing of this Motion.

### ISSUES TO BE DECIDED

1.      Whether the Court should dismiss Count I of Plaintiff's Complaint for breach of contract because Plaintiff is not a third-party beneficiary of the Visa Core Rules and Product and Service Rules ("Visa Rules")[1] and Visa's alleged failure to enforce the no-surcharge rule contained in the Visa Rules does not constitute a breach of contract.

2.      Whether the Court should dismiss Count II of Plaintiff's Complaint for unjust enrichment because Plaintiff's breach of contract claim precludes a claim for unjust enrichment and Plaintiff's Complaint does not contain allegations showing that Visa was "unjustly" enriched.

3.      Whether the Court should dismiss Count III of Plaintiff's Complaint for violations of the California Unfair Competition Law because Plaintiff lacks standing to bring his UCL claim and has not pled an "unfair" business practice by Visa.

4.      Whether the Court should dismiss Count IV of Plaintiff's Complaint for declaratory and injunctive relief because Plaintiff has not alleged any actual, present controversy between Plaintiff and Visa that can be adjudged by the Court and injunctive relief is not a standalone cause of action.

---

[1] *Visa Core Rules and Visa Product and Service Rules*, VISA (Oct. 19, 2024), https://usa.visa.com/content/dam/VCOM/download/about-visa/visa-rules-public.pdf.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.  INTRODUCTION

Visa operates an electronic payments network and provides payment card services to its clients—member financial institutions—to facilitate and process payment card transactions.  Visa is not a bank: it does not extend credit or maintain deposit accounts, it does not itself issue payment cards, and Visa cardholders (and merchants) are not its customers.  Instead, Visa's business is the facilitation of electronic payment transactions for its financial institution customers, which include merchants' banks (known as "acquiring banks") and cardholders' banks ("issuing banks").  Visa has established the Visa Rules that govern the Visa system and Visa's relationship with its acquiring and issuing bank clients ("Member Banks").  The Visa Rules are a binding contract between Visa and each Member Bank.

In this action, Plaintiff, a South Carolina resident, complains that on three occasions in late 2024, merchants applied an "illegal" 3% surcharge to purchase transactions he made in South Carolina using his Visa debit card.  The Visa Rules, which form a contract between Visa and its bank clients, require Visa's acquiring banks to ensure that merchants do not impose surcharges on Visa debit card transactions.  Indeed, the Rules explicitly assign to the acquiring bank responsibility for merchant conduct, and expressly state that they do not confer any rights or benefits on third parties.  Nevertheless, Plaintiff brings this action against Visa, on behalf of himself and a putative class of cardholders, for a supposed breach of that contract, unjust enrichment and unfair conduct, alleging in conclusory fashion that Visa has failed to systematically enforce its own rule in order to somehow goose its profits by incrementally increasing the gross transaction amounts on which its percentage-based network fees are calculated.  *See*, *e.g.*, Compl. ¶ 1 (alleging that "[b]y failing to enforce its own contracts with Acquirer banks who enable merchants to accept Visa-branded debit cards, Visa ensures that it receives a portion of such surcharges, in the form of 'debit assessment fees'").  Plaintiff's theory is nonsensical.  Despite Plaintiff's rhetoric, no law or regulation requires Visa to maintain a rule prohibiting surcharging—so if Visa's objective were to incrementally increase its debit assessment fees by virtue of surcharging, it simply would not prohibit debit surcharging in the first place.  In any case, Plaintiff's claims suffer from multiple legal defects that mandate dismissal of the Complaint.

First, the no-surcharge rule upon which Plaintiff hinges his claims is contained in the Visa Rules, an agreement between Visa and its Member Banks to which Plaintiff is a complete stranger. Even if Plaintiff was a third-party beneficiary of the Visa Rules—and he is not for the reasons set forth herein—a third-party beneficiary to a contract could only sue the *breaching* party to that contract, and Plaintiff identifies no provision of the Visa Rules that Visa has breached. To the contrary, the Visa Rules impose on the acquiring bank the duty to ensure that debit transactions are not surcharged. Plaintiff's attempt to convert Visa's *right* under the contract to enforce violations of that rule by its Members into an *obligation* under the contract is contrary to the plain terms of the Visa Rules.

Second, Plaintiff does not allege facts necessary to state a third-party beneficiary claim. The Visa Rules explicitly state that they do *not* confer any rights, privileges, or claims of any kind as to any third parties. This express language bars Plaintiff's third-party beneficiary contract claim, and allowing any cardholder in the United States who has been surcharged by a *merchant* to sue *Visa* for merchants' violations of the Visa Rules would be contrary to Visa's reasonable expectations. Plaintiff cannot satisfy any of the required elements necessary to state a third-party beneficiary claim under California law.

Third, Plaintiff cannot point to any unjust or unfair conduct that results from Visa's alleged failure to enforce its own no-surcharge rule. As already noted, while Visa retains discretion to enforce its no-surcharge rule by imposing compliance assessments against the Member Banks with whom Visa is in privity, the Visa Rules make clear from the outset that responsibility for ensuring *merchant* compliance with the Rules rests with the merchant's acquiring bank. Moreover, even if Visa were obligated to enforce its Rules, that Plaintiff allegedly was surcharged on three occasions does not sufficiently allege that Visa is not making reasonable efforts to do so.

Fourth, in addition to a failure to plead any unjust or unfair conduct by Visa, Plaintiff's unjust enrichment and UCL claims also suffer from additional deficiencies. A claim for unjust enrichment is barred where, as here, an agreement exists that defines the rights of the contracting parties, and Plaintiff's UCL claim is barred because Plaintiff, a South Carolina resident allegedly injured in South Carolina, lacks standing to pursue a claim under California's UCL statute.

Finally, because there is no actual controversy between Plaintiff and Visa for this Court to adjudicate, Plaintiff's claim for declaratory and injunctive relief must fail. Because amendment would be futile, Plaintiff's entire Complaint should be dismissed with prejudice.

## II.    BACKGROUND[2]

### A.    Debit Card Transactions and Applicable Visa Rules

A debit card allows a cardholder to pay for goods or services by transferring funds directly from the cardholder's bank account. Compl. ¶ 10(b). In general, at least five entities are involved in debit transactions: the cardholder; the bank that issued the cardholder's debit card (the "issuing bank"); the merchant; the merchant's bank (the "acquiring bank"); and the card network. *Id.* ¶¶ 11–16. Card networks like Visa facilitate the flow of funds between the issuing banks and acquiring banks to settle transactions. *Id.* Plaintiff complains that "[s]ome merchants who accept electronic forms of payment impose upon cardholders a 'surcharge,' which is 'an additional fee or charge that a merchant adds to a consumer's bill for using a particular form of payment.'" *Id.* ¶ 19. Plaintiff alleges that "Visa's rules prohibit U.S. merchants from imposing surcharges on purchases made using Visa-branded *debit* cards." *Id.* ¶ 21 (emphasis in original). Plaintiff further alleges that Visa receives "[a] debit assessment fee" when "the merchant accepts payment from a consumer cardholder using a debit card marked with [Visa's] brand." *Id.* ¶ 17. According to Plaintiff, because "such [debit assessment] fees constitute 0.13% of the gross transaction volume," *id.*, Visa benefits from the surcharges imposed.

The Visa Rules are incorporated by reference into Plaintiff's Complaint. *See* Declaration of Sharon D. Mayo in Support of Visa Inc.'s Motion to Dismiss ("Mayo Decl."), Ex. A. The Visa Rules make clear that they "represent a binding contract between Visa and each Member" and "govern the relationship between Visa and its Members and their agents. The Visa Rules <u>do not constitute a contract, promise, or representation or confer any rights, privileges, or claims of any kind as to any third parties</u>." *Id.* at 66 and Section 1.1.1.6 (emphasis supplied). A Member is defined as "[a] client of Visa U.S.A., Visa International, Visa Worldwide, Visa Europe Limited, or

---

[2] The following facts are based on the allegations in the Complaint, which are accepted as true for purposes of this motion only.

Visa International Servicios de Pago España, S.R.L.U. or a customer that has entered into a Services Agreement with Visa Canada." *Id.* at 887.  The Visa Rules elsewhere make clear that they "govern participation of our financial institution clients in the Visa system" and that they "apply only to the operations of financial clients within the relevant region or country." *Id.* at 2.

Under the Visa Rules, surcharging of Visa *credit* card transactions is permitted, subject to certain conditions intended to ensure that Visa is treated in a nondiscriminatory fashion relative to its competitor card networks. *Id.* at Sections 5.5.1.7 & 5.5.1.8; *see also* Compl. ¶ 20 (noting that "[u]nder certain conditions, Visa permits merchants to apply surcharges on purchases made via *credit* card").  With regard to *debit* card surcharging, the Visa Rules provide that "[a] Merchant must not add any amount over the advertised or normal price to a Transaction, unless applicable laws or regulations expressly require that a Merchant be permitted to impose a surcharge." Mayo Decl. Ex. A, Section 1.5.5.2.  The Visa Rules explain that responsibility for merchant compliance— as relevant here with the debit no-surcharge rule—*lies with the merchant's acquiring bank*: "Responsibility is assigned to a Member.  For example: 'A Merchant must …' means 'An Acquirer must ensure that its Merchant…'" *Id.* at 66; Compl. ¶ 24 n.24.

In turn, this binding contract between Visa and its Member Banks also identifies Visa's rights and remedies in the event that the Members violate their obligations.  In a section entitled "*Visa Right to Impose Non-Compliance Assessments*," the Rules specify "[e]nforcement mechanisms that Visa *may* use for violations of the Visa Charter Documents or Visa Rules," including imposition of non-compliance assessments on Visa's contracting partner, the merchant's acquiring bank.  Mayo Decl. Ex. A, Section 1.11.2.1.  The Rules make clear that Visa "may" exercise these rights "at its sole discretion" and that these are "in addition to [other] enforcement rights available to Visa." *Id.*  Visa also reserves the right, "[a]t its sole discretion, at any time," to "[i]nvestigate, review, audit, or inspect a Member, or the Member's … Merchants, …, including by inspecting the premises and auditing the books, records, and procedures of the Member, … [or] Merchant, … to ensure that it is complying with the …Visa Rules." *Id.* Section 1.1.6.2.

**B.     Plaintiff's Claims**

Plaintiff alleges that "Visa entered into contracts with its Acquirer banks, in the form of the

Visa Rules and additional documents, which included Visa's obligation to ensure that merchants who accept Visa-branded cards did not impose surcharges on debit card transactions." Compl. ¶ 50. Plaintiff contends that "[s]uch contracts were made expressly for the benefit of Plaintiff and Class Members, encouraging Visa debit cardholders to use their Visa debit cards when engaging in transactions with merchants." *Id.* ¶ 51. Plaintiff alleges that "Visa knowingly breached these contracts." *Id.* ¶ 54.

Plaintiff further alleges that "Visa claims that it enforces the No Surcharge Rule, by imposing fines on its Acquirer banks, to verify that no surcharges are imposed on debit transactions." *Id.* ¶ 23. Plaintiff complains, however, that "Visa does not enforce the No Surcharge Rule in a systematic or effective manner" and that "despite Visa's No Surcharge Rule, merchants routinely impose such surcharges on consumers making purchases via debit card." *Id.* ¶¶ 27–28. Specifically, Plaintiff asserts that he was charged a 3% debit surcharge on three occasions in Lexington, South Carolina between October 31, 2024, and November 14, 2024. *Id.* ¶¶ 30–32. According to Plaintiff, "[a]s a result of Visa's failure to enforce the No Surcharge Rule, Visa profits from merchants' unlawful imposition of debit card surcharges, by collecting a 'debit assessment fee.'" *Id.* ¶ 29. Plaintiff further contends that "[t]hrough the unlawful imposition of surcharges on debit card payments, which Visa knowingly permits despite its own No Surcharge Rule, Plaintiff and Class Members have overpaid for goods and services." *Id.* ¶ 35.

Based on the above allegations, Plaintiff purports to bring claims on behalf of a putative nationwide class of "[a]ll persons … who paid a surcharge when using a Visa-branded debit card in a transaction with a merchant located in the United States between 2010 and the present." *Id.* ¶ 37. Plaintiff's Complaint includes four counts: (1) breach of a third-party beneficiary contract; (2) unjust enrichment; (3) violation of the California Unfair Competition Law; and (4) declaratory and injunctive relief. *See id.* ¶¶ 49–79.

## III.    LEGAL STANDARD

Under Rule 12(b)(6), a complaint that fails to state a claim upon which relief can be granted should be dismissed. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible only when a plaintiff pleads sufficient facts to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.

In assessing the sufficiency of the complaint, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted).  The Court may also consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters subject to judicial notice.  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014).  "The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001).

## IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF A THIRD-PARTY BENEFICIARY CONTRACT (COUNT I)

Plaintiff's claim for breach of a third-party beneficiary contract claim must be dismissed because it fails to plausibly allege any breach of contract by Visa.  Even if a breach by Visa were alleged, and it is not, Plaintiff fails to plausibly allege that he is anything more than an incidental beneficiary of the agreements between Visa and acquiring banks.  The Visa Rules, in fact, unequivocally state that they *do not* confer any benefits on third parties such as Plaintiff.[3]  Plaintiff likewise fails to plausibly allege that a motivating purpose of these agreements was to benefit debit cardholders, and that allowing Plaintiff to bring his own breach of contract claim would be consistent with the objectives of these agreements and the reasonable expectations of the actual contracting parties – Visa and the acquiring banks.

---

[3] The Visa Rules, which are referenced extensively in Plaintiff's Complaint (e.g., Compl. ¶¶ 21–27), may be considered under the incorporation by reference doctrine.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (under the incorporation by reference doctrine, a court may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading") (internal citation omitted).  The Court may also take judicial notice of the Visa Rules, which is a publicly available document.  *See, e.g.*, *Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1293 n.1 (C.D. Cal. 2015) (taking judicial notice of a deed of trust and mortgage that were matters of public record and where plaintiffs did not contest authenticity).

### A.    Plaintiff Does Not Allege Any Breach of a Contract by Visa

It is fundamental that to sustain any claim for breach of contract – whether as a third-party beneficiary or otherwise – a plaintiff must plausibly allege that the contract was breached *by the party being sued*. Here, Plaintiff acknowledges that the Visa Rules form the contract between Visa and its Members, and that those Rules prohibit merchants from imposing debit surcharges. Compl. ¶ 22. He further alleges that the no-surcharge rule was breached when merchants imposed surcharges on three of his purchases in 2024. *Id.* ¶¶ 30–32. But that allegation, on its face, at best identifies a breach of a contract provision by "merchants" which, by operation of the Rules, means their acquiring banks. Mayo Decl. Ex. A at 66, Compl. ¶ 24 n.24 ("Responsibility is assigned to a Member. For example: 'A Merchant must …' means 'An Acquirer must ensure that its Merchant…'"). Indeed, although Plaintiff makes the conclusory allegation that Visa's contract with its Acquirer Banks "included Visa's obligation to ensure that merchants who accept Visa-branded cards did not impose surcharges on debit transactions," Compl. ¶ 50, he alleges no specific facts and identifies no specific contractual terms to support that claim, which is flatly contradicted by his own admission that "the obligation to enforce the No Surcharge Rule is imposed on Visa's Acquirer banks" through the Visa Rules. *Id.* ¶ 27.

Instead, the Rules make clear that discretion to enforce violations of the Rules – including the no-surcharge rule – is a "right" of Visa's under the contract, not an obligation. *See* Mayo Decl. Ex. A, Section 1.11.2.1 (Visa Right to Impose Non-Compliance Assessments). Under the Visa Rules, Visa retains "sole discretion" in deciding even whether to "[i]nvestigate, review, audit, or inspect . . . Merchants" "to ensure that [the merchant] is complying with the Visa Charter Documents, Visa Rules, and applicable brand and security standards and procedures." *Id.*, Section 1.1.6.2; *see also Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 957 (9th Cir. 2023) (no breach of contract where "the [agreement] specifically states that Apple has 'sole discretion' to approve or deny requests to distribute apps on the App Store"). In the absence of a contractual provision obligating Visa to do something, there can be no breach by Visa. *See, e.g., Gabriel v. Wells Fargo Bank, N.A.*, 188 Cal. App. 4th 547, 553 n.3 (2010) (to sustain a cause of action for breach of contract, the plaintiff must show that the defendant "failed to do something that the contract

required") (citing CACI No. 303).

A third-party beneficiary bringing a breach of contract claim is similarly required to identify a contractual obligation that the Defendant has failed to fulfill. In *Goddard v. Google, Inc.*, for example, the plaintiff claimed that she was an intended third-party beneficiary of Google's Advertising Terms, which incorporated a Content Policy requiring mobile subscription service advertisers to display certain information about their products. 640 F. Supp. 2d 1193, 1199 (N.D. Cal. 2009). The plaintiff alleged that Google breached its Content Policy when she was charged for downloading products without notice, but the court held that the plaintiff failed to allege that Google "promised Plaintiff or anyone else, in any form or manner, that it would enforce its Content Policy." *Id.* at 1200 (noting that "[i]f a contract is to be a basis of liability for the defendant's violation of its own terms and conditions . . ., it must be a contract in which the defendant promises to abide by these terms") (quoting *Souza v. Westlands Water Dist.*, 135 Cal. App. 4th 879, 892 (2006)) (cleaned up). Instead, the court found that Google's Content Policy constituted a promise by Google's advertising customers to Google, and that "[n]either agreement contain[ed] any promise *by Google* to enforce its terms of use or otherwise to remove noncompliant advertisements." *Id.* at 1201; *see also Prager University v. Google LLC*, 85 Cal. App. 5th 1022, 1038 (2022) (dismissing Prager's breach of contract claim against Google because "the community guidelines in no way purport to bind defendants to publish any given video, or to remove a video only for violation of those guidelines" and that "Prager conflates user guidelines with provider duties").

Like the plaintiff in *Goddard*, Plaintiff here seeks to create contractual obligations out of whole cloth. Plaintiff has not alleged that Visa's agreements with the acquiring banks committed Visa to enforce its no-surcharge rule at all, much less to perfectly enforce it such that no surcharge would ever be imposed by any of the millions of merchants in America who accept Visa debit cards.[4] Indeed, even Visa's right to enforce a violation of the Rules by issuing non-compliance

---

[4] Even if Visa did have an obligation to enforce its no-surcharge rule, and as demonstrated, Visa did not, Plaintiff offers only the conclusory allegation that "Visa does not enforce the No Surcharge Rule in a systematic or effective manner." Compl. ¶ 27. The Complaint contains no facts to support this conclusory statement. That Plaintiff personally has experienced debit surcharging by one or more of the more than ten million merchants that accept Visa-branded debit cards does not

(Footnote Cont'd on Following Page)

assessments only extends to the acquiring banks with whom it is in privity. Mayo Decl. Ex. A, Section 1.11.2.1. It remains incumbent upon acquiring banks to determine whether and how to ensure that individual merchants not surcharge.

### B.    Plaintiff is Not a Third-Party Beneficiary of Visa's Contracts

Plaintiff's breach of contract claim for violation of the Visa Rules also fails because he fails to adequately plead that he is a third-party beneficiary of the contract.

In California[5], a third-party beneficiary claim may proceed only where the complaint alleges facts that answer three separate questions affirmatively:

> (1) whether the third party would in fact benefit from the contract, but also (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties.

*Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830 (2019); *see also Iron Bridge Mortg. Fund, LLC v. Bank of Am., N.A.*, 539 F. Supp. 3d 1030, 1038–39 (N.D. Cal. 2021) (applying *Goonewardene* factors and dismissing third-party beneficiary claim). None of these elements is satisfied here.

### 1.    Plaintiff Only Incidentally Benefits From the Visa Rules

Plaintiff has not alleged any facts showing that he receives more than an incidental or remote benefit from Visa's Rules, including its no-surcharge rule. For this reason alone, his claim for breach of a third-party beneficiary contract is barred.

A third party that "'only incidentally or remotely benefits' from a contract" cannot satisfy the first element of a third-party beneficiary claim. *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 946

---

support the speculation that Visa is not enforcing its no-surcharge rule. Plaintiff's logic is similar to claiming that governments do not enforce their laws because some criminals continue to violate them.

[5] California law governs whether Plaintiff is a third-party beneficiary. In an action involving state law claims, federal courts apply the choice-of-law rules of the forum state. *See In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1214 (N.D. Cal. 2007). Under California law, "[a] contract is to be interpreted according to the law and usage of the place where . . . it is made" if there is no single place of performance indicated. Civ. Code § 1646; *see also Ameron Intern. Corp. v. Am. Home Assur. Co.*, No. CV 11–1601 CAS, 2011 WL 2261195, at *4 (C.D. Cal. June 6, 2011) (noting that the plain language of section 1646 refers to the "place where it is to be performed," not places, and looking to where the contract was made). Here, there is no single place of performance for the Visa Rules, and those rules were made in California, where Visa has its principal place of business. *See* Compl. ¶ 7.

(9th Cir. 2022) (citing *Lucas v. Hamm*, 56 Cal. 2d 583, 590 (1961)) (cleaned up).  "The fact that [a third party is] incidentally named in the contract, or that the contract, if carried out according to its terms, would inure to his benefit, is not sufficient to entitle him to demand its fulfillment." *LaBarbera v. Sec. Nat'l Ins. Co.*, 86 Cal. App. 5th 1329, 1341 (2022) (quoting *East. Aviation Grp., Inc. v. Airborne Express, Inc.*, 6 Cal. App. 4th 1448, 1452 (1992)).  While the third-party beneficiary need not be identified expressly in the contract, the contract must at least identify a class of intended beneficiaries to which the plaintiff belongs.  *See Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821–22 (9th Cir. 1985).

Nothing in the Visa Rules expresses an intent to benefit Plaintiff.  To the contrary, the Visa Rules specify that they "govern the relationship between Visa and its Members and their agents. *The Visa Rules do not constitute a contract, promise, or representation or confer any rights, privileges, or claims of any kind as to any third parties*."  Mayo Decl. Ex. A, Section 1.1.1.6 (emphasis added).  This language forecloses Plaintiff's argument that he is an intended third-party beneficiary.  *See Balsam v. Tucows Inc.*, 627 F.3d 1158, 1163 (9th Cir. 2010) ("[W]e conclude that the 'No Third Party Beneficiaries' clause unambiguously manifests an intent *not* to create any obligations to third parties through the [agreement]."); *MNG 2005, Inc. v. Paymentech, LLC*, No. 4:18-CV-01155-JAR, 2019 WL 3531949, at *4 (E.D. Mo. Aug. 2, 2019) ("Visa is correct that the Rules 'do not constitute a contract, promise, or representation or confer any rights, privileges, or claims of any kind as to any third parties.'").  Because Plaintiff has not alleged any facts showing that the no-surcharge rule contained within the Visa Rules was intended to benefit Plaintiff directly, his third-party beneficiary allegations are deficient.

### 2. The Motivating Purpose of the Contract (and No-Surcharge Rule) Was Not to Provide a Benefit to Plaintiff

Plaintiff also fails to allege facts showing that a motivating purpose of the agreements between Visa and acquiring banks was to provide a benefit to Plaintiff.  In *Goonewardene*, the California Supreme Court emphasized that "the contracting parties must have a motivating purpose to benefit the third party, and not simply knowledge that a benefit to the third party may follow from the contract." *Goonewardene*, 6 Cal. 5th at 830.  The court rejected a claim that an employee

- 11 -

was a third-party beneficiary of a contract between the employer and a payroll company. *Id.* at 834.

The court explained that an employer ordinarily retains a payroll company to provide a benefit *to itself* through increased efficiency and the avoidance of penalties, not to benefit its employees with respect to the amount of wages they receive. *Id.* at 835.

Here, the motivating purpose of the no-surcharge rule (and the Visa Rules more generally) is to "support the use and advancement of Visa products and services" and to "minimize risks and provide a common, convenient, secure, and reliable global payment experience." Mayo Decl. Ex. A at 66. Consistent with that, the Supreme Court has recognized in a case addressing a similar rule imposed by a competing network that the purpose of network rules focused on cardholder experiences at the point of sale is fundamentally about *protecting payment networks* from negative externalities on the payment system as a whole:

> [American Express's] agreements actually stem negative externalities in the credit-card market and promote interbrand competition. When merchants steer cardholders away from Amex at the point of sale, it undermines the cardholder's expectations of 'welcome acceptance' . . . . A lack of welcome acceptance at one merchant makes a cardholder less likely to use Amex at all other merchants. This externality endangers the viability of the entire Amex network. And it undermines the investments that Amex has made to encourage increased cardholder spending, which discourages investments in rewards and ultimately harms both cardholders and merchants.

*Ohio v. Am. Express Co.*, 585 U.S. 529, 551 (2018).

While Plaintiff alleges that "protection of Visa-branded debit cardholders from surcharges was the direct and primary objective of the contracting parties" (Compl. ¶ 52), the Complaint contains no factual allegations supporting that speculation, which is contradicted by the text of the Visa Rules. *See supra* at 4.

### 3.    Permitting Plaintiff to Bring a Breach of Contract Action is Inconsistent With the Objectives of the Contract and Reasonable Expectations of the Contracting Parties.

The third question in the *Goonewardene* test focuses on "whether, taking into account the language of the contract and all of the relevant circumstances under which the contract was entered into, permitting the third party to bring the proposed breach of contract [claim]" is consistent with the objectives and reasonable expectations of the contracting parties. 6 Cal. 5th at 830. Put another way, this element asks for a "judgment regarding the potential effect that permitting third party

- 12 -

enforcement would have on the parties' contracting goals, rather than a determination whether the parties actually anticipated third party enforcement at the time the contract was entered into." *Id.* at 830–31.  In *Goonewardene*, the California Supreme Court explained that if every employee was authorized to sue its employer's payroll company for an alleged wage violation, the payroll company would incur additional costs in having to defend these lawsuits, and these costs would likely be passed on to the employer.  *Id.* at 836 (concluding this would be "inconsistent with the reasonable expectations of the employer as well as the payroll company").

Allowing Plaintiff to sue Visa for failing to enforce its no-surcharge rule would be inconsistent with the objectives of the Visa Rules and the reasonable expectations of Visa and the acquiring banks.  The Rules are "set and modified by Visa to support the use and advancement of Visa products and services, and represent a binding contract between Visa and each Member." Mayo Decl. Ex. A at 66.  Allowing cardholders to sue Visa for failure to enforce a Rule it is not required by law or equity to maintain in the first place is damaging to the network – at a minimum, by creating added costs of enforcement and defense of lawsuits like Plaintiff's – and runs contrary to the reasonable expectations of the contracting parties.

Moreover, the plain language of the Rules makes clear that it was the objective and the reasonable expectation of the parties that the merchant's acquiring bank, not Visa, would be responsible for  "ensur[ing] that . . . Debit Card Transactions are not assessed a Credit Card Surcharge."  Mayo Decl. A, Section 5.5.1.10.  And again, the Visa Rules explicitly manifest an intent to *not* allow third parties to bring claims based on violations of the Rules.  *See id.*, Section 1.1.1.6 ("The Visa Rules do not constitute a contract, promise, or representation or confer any rights, privileges, or claims of any kind as to any third parties.").  Visa could not have reasonably expected that any cardholder who is improperly surcharged by a merchant at the point of sale could bring a lawsuit against Visa.

Plaintiff identifies no breach of contract by Visa and is not a third-party beneficiary to Visa's agreements with its Member banks.  His breach of contract claim must therefore be dismissed.

## V.   PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT (COUNT II)

### A.   Plaintiff's Third-Party Beneficiary Breach of Contract Claim Precludes a Claim for Unjust Enrichment

Plaintiff also brings a claim for unjust enrichment, which requires a showing that the defendant received a benefit at the plaintiff's expense and that the circumstances make it "unjust" for the defendant to retain the benefit.  *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1094 (N.D. Cal. 2017) (citing *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008)).  Because Plaintiff does not adequately plead that he is a third-party beneficiary to Visa's contracts with its acquiring banks, Plaintiff's unjust enrichment claim likewise fails.

Under California law, a plaintiff cannot "'circumvent the strong presumption against third-party beneficiaries . . . by recasting an alleged violation of the [contract] as a common law claim' for unjust enrichment."  *City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 479 (2022) (quoting *Feingold v. John Hancock Life Ins. Co. (USA)*, 753 F.3d 55, 61 (1st Cir. 2014)).  Here, Plaintiff's unjust enrichment claim is wholly derivative of his third-party beneficiary claim.  The sole basis for Plaintiff's unjust enrichment claim is that Visa received a benefit in the form of a debit assessment fee due to its alleged failure to enforce its no-surcharge rule in its contracts with the acquiring banks.  *See* Compl. ¶¶ 59–65.  Plaintiff's third-party beneficiary claim likewise alleges injury stemming from Visa's alleged failure to enforce its no-surcharge provision.  *See id.* ¶¶ 50–55.  California courts have made clear that unjust enrichment claims are barred under these circumstances.  *See, e.g.*, *Marina Tenants Ass'n v. Deauville Marina Dev. Co.*, 181 Cal. App. 3d 122, 134 (1986) (rejecting an unjust enrichment theory of recovery that was "wholly derivative of the third-party beneficiary claim" because "a court of equity. . . cannot create new rights under the guise of doing equity"); *see also De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018) (noting that "[u]njust enrichment is not a cause of action" but rather "just a restitution claim" and that "[b]ecause [plaintiff's other] claims fail, her unjust enrichment claim fails as well" since "[t]here being no actionable wrong, there is no basis for the relief") (citations omitted).

And even if Plaintiff were somehow able to show that he is a third-party beneficiary of

Visa's agreement with acquiring banks, his unjust enrichment claim would still be barred.  Under California law, a plaintiff is barred from bringing a claim of unjust enrichment when the subject matter of his claim is governed by a binding express contract.  *See Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc. ("CMA")*, 94 Cal. App. 4th 151, 172–73 (2001).  In *CMA*, the Court affirmed dismissal of the plaintiff's quasi-contract claim as a matter of law on the ground that "a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements [namely, the 'Intermediary-Physician Agreements,' which provided the physicians' right to compensation] exist and define the parties' rights."  *Id.* at 172; *see also City of Oakland v. Oakland Raiders*, No. 18-CV-07444-JCS, 2019 WL 3344624, at *17 (N.D. Cal. July 25, 2019) (an unjust enrichment claim "does not lie when an enforceable, binding agreement exists defining the rights of the parties") (quoting *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996)).

Like the claims at issue in *CMA*, Plaintiff's unjust enrichment claim here is barred because the subject matter of the claim is governed by binding agreements.  As alleged in the Complaint, Visa entered into agreements with its acquiring banks that included rules set forth by Visa.  *See* Compl. ¶ 60.  Plaintiff's unjust enrichment claim is based on the allegation that Visa violated these contracts when it failed to "enforc[e] its own rules and contracts with its Acquirer banks" by "allow[ing] Acquirer banks and their merchant clients to impose surcharges."  *Id.* ¶¶ 60–61.  These allegations make clear that the subject matter of Plaintiff's unjust enrichment claim—i.e., whether Visa was unjustly enriched by allegedly failing to enforce its no-surcharge rule—is governed by Visa's agreements with its acquiring banks.

**B.     There Is No "Unjust" Retention of a Benefit By Visa**

Plaintiff's unjust enrichment claim also fails because Plaintiff's allegations do not show that Visa's retention of any benefit it received from the surcharges imposed by merchants was "unjust." As already discussed *supra* at pages 8–10, nothing obligates Visa to impose or enforce its no-surcharge rule.  *See*, *e.g.*, *Oakland Raiders*, 83 Cal. App. 5th at 480 (unjust enrichment claim failed where "nothing in the [Relocation] Policy obligates member clubs to (or says how they should) weigh the relocation factors in determining how to vote on a proposed relocation" because "[t]he

factors [were] merely 'useful ways to organize data and to inform' each club's judgment about whether a proposed transfer advances the clubs' collective interests").

Similarly, Plaintiff's failure to allege unfair conduct under the California UCL (*see infra* at 18–21) mandates dismissal of Plaintiff's unjust enrichment claim due to lack of wrongful conduct. *See Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 806 (N.D. Cal. 2024) (dismissing unjust enrichment claim that was "based on the same conduct as the California consumer protection claims, which the Court found are insufficiently plead").  Plaintiff also does not allege any facts to suggest that Visa knew these particular merchants were imposing surcharges on debit transactions in violation of the no-surcharge rule. "[A] party who does not know about another's mistake, and has no reason to suspect it, may not be required to give up the benefit if he or she also relied on it to his or her detriment." *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996) (citation omitted).  Plaintiff offers only the conclusory allegation that Visa "turn[ed] a blind eye to merchants' illegal surcharges" (Compl. ¶ 60), but does not allege that Visa had any knowledge of the merchants' violations.  Plaintiff's unjust enrichment claim should be dismissed.

## VI.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE CALIFORNIA UNFAIR COMPETITION LAW (COUNT III)

Plaintiff, a non-California resident, lacks standing to assert a UCL claim for injuries that occurred outside of California.  Plaintiff's UCL claim also fails as a matter of law because he fails to plausibly allege any unfair business practice by Visa.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1359 (2010) (quoting Cal. Bus. & Prof. Code § 17200).  A UCL plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (emphasis in original).

Plaintiff claims that Visa violated the "unfair" prong of the UCL.  *See* Compl. ¶ 71.  "Although the precise test for the UCL's 'unfair' prong has not been definitively established," courts typically apply either the "balancing test" or "FTC Act section 5 test" in actions brought by

consumers.  *See In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 930 (N.D. Cal. 2018).

Under the balancing test, a business practice is "unfair" when it "offends an established public

policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially

injurious to consumers."  *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861,

886–87 (1999).  Under the FTC Act section 5 test, "[a]n act or practice is unfair if the consumer

injury is substantial, is not outweighed by any countervailing benefits to consumers or to

competition, and is not an injury the consumers themselves could reasonably have avoided."

*Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 839 (2006).  "The question of whether

a business practice is unfair is a question of law."  *Family Home & Fin. Ctr., Inc. v. Freddie Mac*,

461 F. Supp. 2d 1188, 1195 (C.D. Cal. 2006).

Regardless of which test is applied, Plaintiff's UCL claim should be dismissed.  Plaintiff's

allegations, even accepted as true, cannot state a claim of unfair conduct under the UCL.  *See, e.g.*,

*Kelly v. BP W. Coast Prods. LLC*, No. 2:14-CV-01507-KJM-CK, 2014 WL 7409220, at *9 (E.D.

Cal. Dec. 30, 2014) (holding that consumer's UCL allegations in class action based on alleged

$0.35 debit surcharge at point of sale did "not rise to the level of unfairness suggested by these

definitions" in the UCL because "[h]e alleges injury of losing only very small amounts of money

and small amounts of time, and he concedes [defendant] later disclosed he would be required to pay

a fee, and only if he did not pay with cash").

### A. Plaintiff, a Non-California Resident Injured Outside of California, Lacks Standing to Bring His UCL Claim

Plaintiff is a South Carolina resident who alleges that merchants in Lexington, South Carolina

"repeatedly charged unlawful debit surcharges" on three occasions.  Compl. ¶¶ 6, 30–32.  Because

Plaintiff, a non-California citizen, does not allege any injury that occurred in California, application

of the UCL here is impermissible.  The California Supreme Court has held that "the presumption

against extraterritoriality applies to the UCL in full force."  *Sullivan v. Oracle Corp.*, 51 Cal. 4th

1191, 1207 (2011).  In *Sullivan*, the court held that the UCL did not apply to Oracle's alleged failure

to pay overtime wages to non-California residents for work performed in states outside of

California, even though Oracle's decision-making process occurred at its California headquarters.

*See id.* at 1207–09.  Here, Plaintiff's claim has no ties to California.  He alleges that merchants in *South Carolina* wrongfully surcharged him on three occasions in *South Carolina*.  Simply pointing to the fact that Visa is headquartered in California and that it allegedly "knowingly permits" surcharging, *see* Compl. ¶¶ 7, 28, is insufficient to defeat the presumption against extraterritorial application of the UCL.  *See*, *e.g.*, *Young v. ByteDance Inc.*, No. 22-CV-01883-VC, 2023 WL 3484215, at *7 (N.D. Cal. May 15, 2023) (where injuries occurred outside of California, "[e]ven accepting that TikTok 'oversaw' the content moderation from California, that conduct alone is not enough to justify expanding the UCL to cover these circumstances"); *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1056 (N.D. Cal. 2013) (dismissing UCL claim due to failure to allege facts suggesting that it was plausible that Wells Fargo made a wrongful decision in California; allegations that Wells Fargo was headquartered in California were insufficient).  At most, Plaintiff alleges inaction by Visa in failing to enforce its no-surcharge rule, but Plaintiff cannot point to any wrongful affirmative conduct that occurred in California, and the decision to surcharge was made by out-of-state merchants.  Plaintiff's UCL claim should therefore be dismissed.

## B. Visa's Alleged Failure to Enforce Its Own Rules Cannot Constitute a Cognizable Injury Under the UCL

Plaintiff's UCL claim also fails because he has not alleged any facts showing that Visa's enforcement of its own no-surcharge rule was an agreed-upon benefit of Plaintiff's transaction.  Courts have repeatedly dismissed UCL claims premised on an entity's alleged failure to enforce its own policies on the basis that compliance with that policy was not an agreed-upon benefit of the consumer's transaction.

For example, in *Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998 (N.D. Cal. 2022), the court dismissed a UCL claim brought by plaintiff against Google under the statute's unfair prong that was based on allegations that Google refused to remove from its digital store an application purportedly used by terrorist and extremist groups to disseminate racist speech and incite violence.  Plaintiff alleged that Google "violated the 'unfair' prong of the UCL by not following their own policies and allowing [the application] to be downloaded despite the aforementioned violations of Google's guidelines."  *Id.* at 1007.  The court concluded that such allegations did not state a claim under the

UCL because plaintiffs had "not alleged facts showing that Google's compliance with its developer guidelines was an agreed-upon benefit of [plaintiffs'] phone purchase transaction" and plaintiffs did "not allege that [plaintiff] purchased the phone from Google, so no such agreement could have been reached at the point of sale." *Id.* at 1007–08.  In another case, the court held that an advertiser failed to state a claim against Google under the UCL unfair prong where plaintiff "has not pleaded facts showing that Google owed an obligation to [the advertiser] to enforce its AdSense Policies." *Woods v. Google*, Inc., 889 F. Supp. 2d 1182, 1195 (N.D. Cal. 2012).  The court noted that "[u]nless [plaintiff] can plead facts showing that he and other advertisers had a legal right to the Smart Pricing discounts that was violated or to the enforcement of the AdSense Policies, he cannot show any cognizable injury." *Id.*

Plaintiff fails to allege unfair conduct here for the same reasons.  Plaintiff has alleged no direct relationship with Visa nor any facts to establish that Visa's enforcement of its no-surcharge rule was an agreed-upon benefit of Plaintiff's transactions with merchants.  Rather, as Plaintiff acknowledges, Visa's no-surcharge rule is contained in an agreement with acquiring banks and imposes upon those banks the obligation to ensure that debit transactions are not surcharged. Compl. ¶ 50.

### C.  Plaintiff Fails to Allege Necessary Elements of the FTC Act Section 5 Test

While Plaintiff's UCL claim fails for all the reasons already stated, to the extent that Plaintiff alleges his conduct should be analyzed under the FTC Act section 5 test, he also fails to allege the necessary elements to state a claim.  Under that test, Plaintiff must allege that: (1) consumer injury is substantial; (2) is not outweighed by any countervailing benefits to consumers or to competition; and (3) is not an injury the consumers themselves could reasonably have avoided. *Daugherty*, 144 Cal. App. 4th at 839.  Plaintiff fails to plead facts sufficient to satisfy any of these elements.

#### 1.  Plaintiff Fails to Adequately Allege That Injury to Consumers is Substantial

"For the purpose of alleging an 'unfair' business act or practice, demonstrating 'aggregate harm on consumers is sufficient to show substantial injury.'"  *Imber-Gluck v. Google, Inc.*, No. 5:14-CV-01070-RMW, 2014 WL 3600506, at *6 (N.D. Cal. July 21, 2014) (citation omitted).

- 19 -

Here, Plaintiff alleges no facts to support his claim that "Visa does not enforce the No Surcharge Rule in a systematic or effective manner." Compl. ¶ 27. Rather, he alleges only that he personally was surcharged on three occasions in Lexington, South Carolina. *Id.* ¶¶ 30–32. While Plaintiff alleges "on information and belief" that "the imposition of debit card surcharges is a widespread and routine practice among merchants accepting Visa-branded debit cards," this allegation is conclusory and not supported by any other factual allegations. *Id.* ¶ 34. Plaintiff therefore fails to adequately plead substantial injury to consumers. *See, e.g.*, *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d at 930–31 ("One isolated instance where Huawei allegedly did not provide warranty coverage based on a minor cosmetic issue does not rise to the level of an unfair practice of failing to honor its warranties.").

To the extent that "substantial" injury to the Plaintiff is measured in terms of the magnitude of each consumer's injury, Plaintiff alleges only that he was charged a 3% surcharge on three food and beverage and gift certificate purchases. Compl. ¶¶ 30–32. Such allegations do not establish a substantial injury. *See Kelly*, 2014 WL 7409220, at *9 ($0.35 debit surcharge was not sufficient injury to rise to level of unfairness under UCL in consumer class action); *cf. Chen v. Bank of Am., N.A.*, No. CV 19-6941-MWF-SK, 2019 WL 9633650, at *5 (C.D. Cal. Oct. 29, 2019) ("Plaintiff alleges that his injury was substantial, considering he lost $500,000.").

### 2. Plaintiff Fails to Adequately Allege That His Injury Is Not Outweighed by Countervailing Benefits

Plaintiff includes only a conclusory allegation that "[t]he gravity of Defendant's conduct outweighs any potential benefits attributable to such conduct and there were reasonably available alternatives to further Defendant's legitimate business interests, other than Defendants' conduct described herein." Compl. ¶ 71. This allegation is insufficient to meet Plaintiff's pleading burden. *See Kindred Studio Illustration & Design LLC v. Elec. Commc'n Tech., LLC*, No. CV 18-7661-GW(GJSx), 2018 WL 6985317, at *7 (C.D. Cal. Dec. 3, 2018) (dismissing plaintiff's UCL claim under FTC Section 5 test because its "conclusory allegations" that the alleged harm was "not outweighed by countervailing benefits to consumers or to competition" was insufficient); *Parziale v. HP, Inc.*, 445 F. Supp. 3d 435, 446–47 (N.D. Cal. 2020) (dismissing UCL claim under FTC

Section 5 test where plaintiff "fail[ed] to allege that his injury outweighs any countervailing benefit to consumers" and did not refute the benefits cited by defendant of its challenged conduct). Moreover, any injury from alleged nonenforcement of Visa's no-surcharge rule is outweighed by the incidental benefits to cardholders of having the no-surcharge rule in the first place. As already discussed, nothing requires Visa to impose a no-surcharge rule. Even if merchants do not perfectly comply with the no-surcharge rule, cardholders are better off with an allegedly imperfectly-enforced rule in place than with no rule at all. Compl. ¶ 27.

### 3. Plaintiff Fails to Allege That His Injury Could Not Have Been Reasonably Avoided

In addition, Plaintiff does not allege that alternative payment methods that would not have carried a surcharge were unavailable to him at the point of sale or that he could not have otherwise reasonably avoided his injury. *See, e.g.*, *Kelly*, 2014 WL 7409220, at *9 (noting that consumer could have avoided $0.35 debit surcharge by paying with cash and dismissing UCL claim); *Guttmann v. Nissin Foods (U.S.A.) Co.*, No. C 15-00567 WHA, 2015 WL 4881073, at *2 (N.D. Cal. Aug. 14, 2015) (dismissing claim under unfair prong of UCL where plaintiff "could reasonably have avoided any injury based on [defendant's] use of artificial trans-fat by reading the nutrition-facts panel and deciding not to purchase or consume them based on the presence of partially-hydrogenated oil"). Plaintiff's UCL claim should therefore be dismissed.

## VII. PLAINTIFF FAILS TO STATE A CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF (COUNT IV)

"The fundamental basis of declaratory relief is the existence of an *actual, present controversy* over a proper subject." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 79 (2002) (emphasis in original); *see also Iron Bridge Mortg. Fund, LLC*, 539 F. Supp. 3d at 1039 ("A complaint for declaratory relief is sufficient 'if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties *under a written instrument* . . . and requests that the rights and duties of the parties be adjudged by the court.'") (citing *Ludgate Ins. Co. v. Lockheed Martin Corp.*, 82 Cal. App. 4th 592, 605 (2000)).

Here, there is no actual controversy between Plaintiff and Visa for the reasons already

discussed.  Plaintiff is not a party or third-party beneficiary to Visa's agreements with acquiring banks, has not alleged any contractual breach by Visa, and has no right to enforcement of the no-surcharge rule.  As in *Iron Bridge*, the lack of a written agreement between Plaintiff and Visa mandates dismissal of Plaintiff's declaratory relief claim.  In *Iron Bridge*, plaintiff argued that it was "a third-party beneficiary of the depository agreement between defendant Alvarez and [Bank of America]" and sought a judicial determination that Bank of America was negligent.  *See* 539 F. Supp. 3d at 1039.  However, the court dismissed the declaratory relief claim because "there is no written agreement between Iron Bridge and [Bank of America]" and  "[plaintiff's] attempt to rely on the depository agreement between Alvarez and [Bank of America] through a third-party beneficiary theory is unavailing."  *Id.* (concluding that "[t]here is not an actual controversy involving a written agreement between [plaintiff] and [Bank of America] for this court to adjudicate"); *see also Campana ex rel. Campana v. Allstate Ins. Co.*, No. C-01-1842 PJH, 2001 WL 1081595, at *2 (N.D. Cal. Sept. 12, 2001) ("[T]he lack of an enforceable contractual right precludes declaratory relief where such a cause of action is predicated on recognized contractual rights.") (citing *Blank v. Kirwan*, 39 Cal. 3d 311 (1985)).  Here, there is no actual controversy involving a written agreement between Plaintiff and Visa, and Plaintiff's claim for declaratory relief should therefore be dismissed.

Nor can Plaintiff bring a standalone claim for "injunctive relief."  "An injunction is a remedy, not a cause of action."  *Marlin v. Aimco Venezia, LLC*, 154 Cal. App. 4th 154, 162 (2007); *see also Blue Novis, Inc. v. U.S. All. Grp., Inc.*, No. SACV 20-01280-JVS(DFMx), 2021 WL 346422, at *7 (C.D. Cal. Jan. 27, 2021) ("Injunctive relief is a remedy, not a separate legal theory upon which liability may be premised.").  Count IV should therefore be dismissed.

## VIII.    CONCLUSION

For the foregoing reasons, Visa respectfully requests that its Motion to Dismiss be granted and the Complaint be dismissed with prejudice.

1    Dated:  February 13, 2025                ARNOLD & PORTER KAYE SCHOLER LLP

2                                             By:    /s/ *Sharon D. Mayo*
                                                     Anne P. Davis
3                                                    Sharon D. Mayo
                                                     Andrew S. Hannemann
4
5                                                    Attorneys for Defendant
                                                     VISA INC.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28