UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WILLIAMS,<br><br>        Plaintiff,<br><br>    v.<br><br>VISA, INC.,<br><br>        Defendant. | Case No. 24-cv-08708-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 22 |

Before the Court is Defendant Visa Inc.'s motion to dismiss. ECF No. 22. The Court will grant the motion.

## I.     BACKGROUND

For the purpose of deciding this motion, the Court accepts as true the following allegations from Plaintiff James Williams's complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Visa is a California-based digital payment company that facilitates transactions between consumers, merchants, financial institutions, and government entities. ECF No. 1 ¶ 8. Visa enables electronic payments through Visa-branded credit, debit, and prepaid cards. *Id.* ¶ 9. Cardholders can use Visa-branded cards to make purchases from merchants, which are carried out through a series of steps. *Id.* ¶¶ 11–16. Visa assesses a fee for each transaction, which for debit card transactions is 0.13% of the gross transaction volume. *Id.* ¶ 18. The higher the price a consumer pays to a merchant, the more Visa receives. *Id.*

Some merchants impose surcharges on consumer transactions "to compensate for some of the cost of payment processing." *Id.* ¶ 19. Visa's contracts with merchants ("Visa Rules") allow surcharges for credit card purchases but prohibit them for debit card purchases ("No Surcharge

Rule"). *Id.* ¶¶ 20–22.  Visa represents that it "is actively enforcing its surcharge policy" and that those "who are caught violating Visa's rules[] face potential fines" and may be "subject to non-compliance assessment." *Id.* ¶¶ 23–24.

Williams is a citizen of South Carolina. *Id.* ¶ 6.  He alleges that "Visa does not enforce the No Surcharge Rule in a systematic or effective manner," and as a result, "merchants routinely impose such surcharges on consumers making purchases via debit card.  This practice is widespread and indiscriminate.  Visa knowingly permits it." *Id.* ¶¶ 27–28.  Because the amount Visa collects as its debit assessment fee is a percentage of the gross transaction volume, Visa profits from merchant surcharges on debit card transactions, even though they violate Visa's own rules. *Id.* ¶ 28. "Plaintiff Williams has been repeatedly charged unlawful debit surcharges when using his Visa-branded debit card" to make purchases from various merchants in South Carolina. *Id.* ¶ 30.

Williams filed this action on December 4, 2024 on behalf of himself and a putative class, asserting claims for (1) breach of third-party beneficiary contract, (2) unjust enrichment, (3) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (UCL), and (4) declaratory and injunctive relief.  Visa moved to dismiss.  ECF No. 22.  Williams opposes the motion, ECF No. 28, and Visa has filed a reply.  ECF No. 30.  The Court held a hearing on May 1, 2025.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332(d).

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  While a complaint need not contain detailed factual allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter to, when accepted as true, state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

2

1  the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id.*
2  While this standard is not a probability requirement, "[w]here a complaint pleads facts that are
3  merely consistent with a defendant's liability, it stops short of the line between possibility and
4  plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted).

5        In determining whether a plaintiff has met this plausibility standard, the Court must
6  "accept all factual allegations in the complaint as true and construe the pleadings in the light most
7  favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). "Dismissal
8  under Rule 12(b)(6) is appropriate . . . where the complaint lacks a cognizable legal theory or
9  sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*,
10  521 F.3d 1097, 1104 (9th Cir. 2008).

11  **IV.   INCORPORATION BY REFERENCE OF THE VISA RULES**

12        Visa asks the Court to consider the Visa Rules in ruling on the motion to dismiss. The
13  Visa Rules govern, *inter alia*, the relationship between Visa and acquirer banks. *See* Visa Core
14  Rules and Visa Product and Service Rules (Oct. 19, 2024), available at
15  https://usa.visa.com/content/dam/VCOM/download/about-visa/visa-rules-public.pdf (permalink:
16  https://perma.cc/Z66T-NXEM), cited at ECF No. 1 n.26. Visa argues that Williams incorporates
17  by reference the Visa Rules into his complaint, or, in the alternative, that the Court should take
18  judicial notice of them. ECF No. 22 at 12 n.3. Williams did not respond to Visa's request. *See*
19  ECF No. 28.

20        In general, "district courts may not consider material outside the pleadings when assessing
21  the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure."
22  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). But on a motion to
23  dismiss, the court may "consider materials incorporated into the complaint" when "the complaint
24  necessarily relies upon a document or the contents of the document are alleged in a complaint, the
25  document's authenticity is not in question[,] and there are no disputed issues as to the document's
26  relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

27        The Court agrees with Visa that Williams's complaint "necessarily relies upon" the Visa
28  Rules, including by asserting a breach of contract claim premised on those rules. *See* ECF No. 1

¶¶ 22, 24–27, 50–51. Accordingly, the Court finds that the Visa Rules are incorporated by reference into Williams's complaint.

## V. DISCUSSION

Visa challenges each of Williams's four claims. The Court addresses each claim in turn.

### A. Breach of Third-Party Beneficiary Contract

#### 1. Third-Party Beneficiary

Visa argues that Williams fails adequately to plead that he is a third-party beneficiary of the Visa Rules because he is not a party to those agreements. ECF No. 1 ¶ 10(e); ECF No. 22 at 7. "[U]nder California law, 'a third[-]party beneficiary can enforce a contract made expressly for his benefit. . . . A contract made expressly for a third party's benefit does not need to specifically name the party as the beneficiary; the only requirement is that the party is more than incidentally benefitted by the contract.'" *In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 882 (N.D. Cal. 2019) (quoting *Aberin v. Am. Honda Motor Co.*, No. 16-cv-04383-JST, 2018 WL 1473085, at *7 (N.D. Cal. Mar. 26, 2018)). "[T]hird[-]party beneficiary status is a matter of contract interpretation," and "a person seeking to enforce a contract as a third party beneficiary must plead a contract which was made expressly for his [or her] benefit and one in which it clearly appears that he [or she] was a beneficiary." *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 957 (2005) (alterations in original) (internal quotation marks and citation omitted).

Williams pleads that "Visa entered into contracts with its Acquirer banks, in the form of the Visa Rules and additional documents," and "[s]uch contracts were made expressly for the benefit of Plaintiff and Class Members, encouraging Visa debit cardholders to use their Visa debit cards when engaging in transactions with merchants." ECF No. 1 ¶¶ 50–51. Visa responds by pointing to language in the Visa Rules expressly disclaiming the existence of any third-party beneficiary: "The Visa Rules do not constitute a contract, promise, or representation or confer any rights, privileges, or claims of any kind as to any third parties." ECF No. 22 at 9 (quoting ECF No. 22-2 at 7).

As Williams notes, an express contractual disclaimer of third-party beneficiaries is not dispositive. ECF No. 28 at 5; *see SK Networks Co. Ltd. v. Bentley Forbes Holding, LLC*, No. CV-

4

12-08997-MMM-SHX, 2013 WL 12131715, at *21 (C.D. Cal. Nov. 7, 2013) ("[C]ontractual language disclaiming an intention to benefit third[-]party beneficiaries does not automatically foreclose the parties' intent to benefit a third party"); *Balsam v. Tucows Inc.*, No. CV 09-03585 CRB, 2009 WL 3463923, at *5 (N.D. Cal. Oct. 23, 2009) ("*Balsam I*") ("[I]t is of course possible for parties to intend to benefit third parties despite contractual language disclaiming third party beneficiaries."). Nevertheless, the Ninth Circuit has held that the existence of such a disclaimer "unambiguously manifests an intent *not* to create any obligations to third parties" in "the absence of any evidence to the contrary." *Balsam v. Tucows Inc.*, 627 F.3d 1158, 1163 (9th Cir. 2010) ("*Balsam II*") (emphasis in original); *see also Jajco, Inc. v. Leader Drug Stores, Inc.*, No. C 12-05703 PJH, 2013 WL 2403593, at *6 (N.D. Cal. May 31, 2013) ("[T]he Ninth Circuit held that a clause disclaiming any third-party beneficiaries is strong evidence of intent not to create any obligations to third parties, but is not necessarily dispositive of whether a third party qualifies as a beneficiary") (citing *Balsam II*).

Thus, in light of the language in the Visa Rules expressly disclaiming third party beneficiaries, the Court must look for "evidence to the contrary." *See Balsam II*, 627 F.3d at 1163. All that Williams offers on that score is portions of Visa's "U.S. Merchant Surcharge Q&A." *See* ECF No. 1 ¶¶ 21–22; ECF No. 28 at 5–6. But the Q&A simply summarizes the requirements for merchants laid out in the Visa Rules. *See, e.g.*, ECF No. 1 ¶ 21 ("U.S. merchants cannot surcharge purchases made using a Visa debit card or prepaid card."). The Q&A does not state—or even imply—that the intent of the requirement is to benefit consumers, nor does Williams plead that consumers were the intended audience for the Q&A. In short, the Q&A offers no evidence that the parties to the Visa Rules intended to create obligations to consumers like Williams.

Williams's cited cases are inapposite. For instance, in *FDIC v. Frankel*, No. 11-CV-03279-LHK, 2011 WL 5975262 (N.D. Cal. Nov. 29, 2011), the contract at issue—for an appraisal—expressly stated it was "for the sole purpose of securing a loan on behalf of the borrower" and "not intended to be used for any other purpose or to be used by a third party," but the same contract elsewhere stated that "*other secondary market participants* may rely on this appraisal report." *Id.* at *4 (emphasis in original). This, the Court found, amounted to "seemingly

5

inconsistent evidence of the contracting parties' intent" and rendered the issue unsuitable for resolution on a motion to dismiss. *Id.* Here, while the Visa Rules contain an express disclaimer of third-party beneficiaries, as in *Frankel*, Williams fails to identify any other part of the contract—or other evidence of any kind—that amounts to "inconsistent evidence of the contracting parties' intent."

### 2. Breach of Contract by Visa

Visa also argues persuasively that Williams fails to allege that Visa breached its contract because when merchants impose surcharges on customers' purchasers it is the merchants, not Visa, who are potentially in breach. ECF No. 22 at 13. While Williams's complaint states that Visa's contract with its acquirer banks "included Visa's obligation to ensure that merchants who accept Visa-branded cards did not impose surcharges on debit transactions," ECF No. 1 ¶ 50, Williams cites no provision of the contract imposing that obligation. Under the Visa Rules, the obligation not to impose a surcharge falls on merchants, not Visa. ECF No. 1 ¶ 21; ECF No. 22-2 at 10.

*Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193 (N.D. Cal. 2009), is instructive. In that case, plaintiff Goddard sued Google, alleging that she was harmed "as a result of clicking on allegedly fraudulent web-based advertisements for mobile subscription services" and that "Google . . . illegally furthered this scheme." *Id.* at 1195. Plaintiff sued for, among other claims, breach of contract as a third-party beneficiary of Google's Advertising Terms, "which in turn incorporate a Content Policy requiring that mobile subscription service advertisers display certain information about their products, including whether downloading the products will result in charges to the consumer." *Id.* at 1199. The court dismissed her claim because "there [was] no allegation that Google ever promised Plaintiff or anyone else, in any form or manner, that it would enforce its Content Policy." *Id.* at 1200. The court elaborated:

> Google's Advertising Terms and incorporated Content Policy constituted a promise by Google's advertising customers to Google in exchange for participation in Google's advertising service. Neither agreement contains any promise *by Google* to enforce its terms of use or otherwise to remove noncompliant advertisements.

*Id.* at 1201 (emphasis in original) (citation omitted).

6

Williams does not meaningfully distinguish *Goddard*. And here, as there, the Visa Rules do not "contain any promise *by [Visa]* to enforce the rules at issue."

Williams also argues that "to the extent Visa relies on 'discretion' as to enforcement of the No Surcharge Rule, which Visa claims the Rules confer, such discretion must be exercised in good faith, in accordance with fair dealing, and in a manner consistent with the reasonable expectations of the parties." ECF No. 28 at 7 (citations omitted). Plaintiff's authorities in support of this argument, however, all relate to claims for breach of the implied covenant of good faith and fair dealing—a claim Williams does not bring. Indeed, the word "discretion" appears nowhere in Williams's complaint.

Accordingly, the Court dismisses Williams's claim for breach of third-party beneficiary contract. Because it is not obvious that amendment would be futile, the Court will grant leave to amend.

### B.     Unjust Enrichment

California cases disagree as to whether unjust enrichment is a standalone claim. Some think it is. *E.g., Pro. Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 29 Cal. App. 5th 230, 238 (2018) ("The elements of a cause of action for unjust enrichment are simply stated as receipt of a benefit and unjust retention of the benefit at the expense of another.") (citations and quotation marks omitted)). Others think not. *Hill v. Roll Int'l. Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) ("Unjust enrichment is not a cause of action, just a restitution claim."); *City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 477–78 (2022) ("There is no cause of action in California labeled 'unjust enrichment.'"). "When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey,* 223 Cal. App. 4th 221, 231 (2014).

Regardless of whether the claim is labelled unjust enrichment or restitution, a plaintiff must allege the same two elements: "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000); *Pro. Tax Appeal*, 29 Cal. App. 5th at 238 ("Generally, one who is unjustly enriched at the expense of

1     another is required to make restitution."). "The benefit that is the basis of a restitution claim may
2     take any form, direct or indirect." *Pro. Tax Appeal*, 29 Cal. App. 5th at 238 (citing Restatement
3     (Third) of Restitution and Unjust Enrichment § 1, com. (Am. L. Inst. 2011)). "The fact that one
4     person benefits another is not, by itself, sufficient to require restitution. The person receiving the
5     benefit is required to make restitution only if the circumstances are such that, as between the two
6     individuals, it is *unjust* for the person to retain it." *Welborne v. Ryman-Carroll Found.*, 22 Cal.
7     App. 5th 719, 725 (2018) (emphasis in original) (citation omitted).

8           Visa argues first that Williams's unjust enrichment claim "is wholly derivative of his third-
9     party beneficiary claim" and thus is barred by his failure adequately to plead that claim. ECF No.
10    22 at 19. But the cases Visa cites do not stand for the proposition that, when a plaintiff fails to
11    plead a breach of third-party beneficiary contract claim, the plaintiff also necessarily fails to state a
12    claim for unjust enrichment. In *Marina Tenants Ass'n v. Deauville Marina Dev. Co.*, 181 Cal.
13    App. 3d 122 (1986), the court concluded that plaintiffs had not demonstrated that defendants were
14    unjustly enriched by charging County-approved rents. *Id.* at 134. *De Havilland v. FX Networks,*
15    *LLC*, 21 Cal. App. 5th 845 (2018), involved claims for violation of the statutory right of publicity,
16    the common law tort of misappropriation, and false light invasion of privacy—not quasi-contract.
17    *Id.* at 849. And that court held that plaintiff's restitution claim failed because there had been no
18    underlying wrong. *Id.* at 870. These factually dissimilar situations do not compel dismissal of
19    Williams's unjust enrichment claim, because he does allege an underlying wrong.

20          Visa next argues that, even if Williams had properly pled his breach of third-party
21    beneficiary contract claim, the existence of the Visa Rules—a valid, binding contract—forecloses
22    Williams's quasi-contract unjust enrichment claim. ECF No. 22 at 19–20 ("an unjust enrichment
23    claim 'does not lie when an enforceable, binding agreement exists defining the rights of the
24    parties'" (quoting *City of Oakland v. Oakland Raiders*, No. 18-CV-07444-JCS, 2019 WL
25    3344624, at *17 (N.D. Cal. July 25, 2019))). Williams is not a party to the Visa Rules, however,
26    and therefore those rules do not define the rights of the parties.

27          Lastly, Visa argues that Williams's failure to allege wrongful conduct under the California
28    UCL mandates dismissal of his unjust enrichment claim because he has not pled that Visa's

8

retention of a benefit was wrongful or that Visa was aware of the surcharges. ECF No. 22 at 21. Although the Court does not hold that failure to allege "unfair" conduct under the UCL is always fatal to an unjust enrichment claim—that question is not before the Court—the Court agrees that Williams has failed to plead that Visa's conduct was wrongful. Visa's retention of a portion of the debit surcharge can be wrongful only if it had a duty to Williams not to permit such charges. But Williams fails to identify the source of any such duty. Visa is not required even to have a debit surcharge policy, so Williams and other consumers benefit from the existence of the No Surcharge Policy to the extent merchants follow it. But if merchants don't follow it, Williams offers no basis on which that Policy creates an enforceable obligation to consumers giving rise to a quasi-contract claim.[1]

Visa's motion to dismiss Williams's unjust enrichment claim is granted.

### C. Violation of UCL

Visa contends that Williams fails to state a claim under California's UCL because he fails to show that he has standing, that he has a cognizable injury, or that Visa's alleged conduct was unfair.

#### 1. Standing

The parties agree that "extraterritorial application of the UCL is improper where non-residents of California raise claims based on conduct that allegedly occurred outside of the state." *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 598–99 (C.D. Cal. 2008); ECF No. 28 at 15; ECF No. 30 at 16–17. Visa contends that Williams, a South Carolina resident who alleges that South Carolina merchants charged him surcharges not permitted by the Visa Rules, does not have standing to bring a UCL claim. ECF No. 2 at 22–23. Williams responds that "the decision not to

---

[1] Williams states only:

> Here, Visa's receipt of the assessment fee based on the surcharge imposed by merchants on debit transactions is clearly unjust. It contravenes Visa's own No Surcharge Rule. For Visa to benefit financially from merchants' breach of its own Rules is inequitable, and it ought to return the money it unjustly received on account of such transactions. Plaintiff adequately states a claim in unjust enrichment.

ECF No. 28 at 11.

9

1  enforce the No Surcharge Rule, and to accept the debit assessment fee in respect of such
2  surcharges, was made by Visa, a corporation based in Foster City, California" and that
3  accordingly, "[t]hese decisions and actions were made in California." ECF No. 28 at 15.
4  　　　　Williams's allegations are insufficient to show standing to bring a UCL claim. *Cannon v.*
5  *Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025 (N.D. Cal. Jan. 9, 2013), is instructive. There, the
6  court observed that although it was "possible that the decision" to engage in wrongful conduct
7  occurred in California, there were no "additional facts suggesting that Wells Fargo did make the
8  decision from California." *Id.* at 1056. So too here: apart from his generic allegations that Visa is
9  headquartered here, Williams alleges "no additional facts suggesting that [Visa] did make the
10 decision from California." *See id.* He thus fails to "nudge[]" his allegations regarding UCL
11 standing "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547.
12 　　　　Accordingly, the Court will dismiss Williams's UCL claim with leave to amend.

### 2. Cognizable Injury

14 　　　　To bring a UCL claim, the plaintiff must establish that he "has suffered injury in fact and
15 has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.
16 Thus, the plaintiff must "(1) establish a loss of deprivation of money or property sufficient to
17 qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the
18 result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of
19 the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (emphasis in original).
20 　　　　Visa contends that Williams has not alleged a cognizable injury. In support, Visa cites
21 *Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998 (N.D. Cal. 2022) and *Woods v. Google, Inc.*, 889 F.
22 Supp. 2d 1882 (N.D. Cal. 2012), both of which hold that, unless a plaintiff has a legal entitlement
23 to the enforcement of a policy, he or she incurs no cognizable injury when the policy is not
24 enforced. *Ginsberg*, 586 F. Supp. 3d at 1008; *Woods*, 889 F. Supp. 2d at 1195. Williams fails to
25 persuasively distinguish *Ginsberg*, does not attempt to distinguish *Woods*, and does not offer other
26 relevant authorities that reach a different result. Accordingly, the Court will dismiss the UCL
27 claim for lack of cognizable injury. Because Williams might be able to adequately plead breach of
28 third-party beneficiary contract, and thus show legal entitlement to enforcement of the Visa Rules,

the Court will grant leave to amend.

### 3. Unfairness

The UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Each "prong" of the UCL is a separate and distinct theory of liability. *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Williams is proceeding under the "unfair" prong of the UCL. ECF No. 1 ¶ 71.

"The UCL does not define the term 'unfair' as used in Business and Professions Code section 17200," *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1364 (2010), but the Ninth Circuit has recognized three tests for the determination of what is an "unfair" business practice. "The first, a balancing test, involves an examination of the allegedly unfair practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Donadio v. Hyundai Motor Am.*, 751 F. Supp. 3d 1013, 1022 (C.D. Cal. 2024) (citation and quotation omitted). This test asks "whether the alleged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum v. San Fernando Valley Bar Assn.*, 182 Cal. App. 4th 247, 257 (2010) (quotation omitted). The unfairness balancing test is "intentionally broad[.]" *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999). The second is the "tethering test," which "requires 'that the public policy which is a predicate to [a consumer unfair competition action under the "unfair" prong of the UCL] must be "tethered" to specific constitutional, statutory or regulatory provisions[.]'" *Id.* (quoting *Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*, 9 Cal. 5th 279, 304 n.10 (2020)). The third test comes from "the three-part definition of unfairness applied under section 5 of the FTC Act since 1980, namely that: (1) The consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Nationwide Biweekly*, 9 Cal. 5th at 304 (quotation omitted).[2] The UCL's unfair prong

---

[2] Visa asks the Court to apply the FTC Section 5 test to determine whether Williams has alleged an "unfair" practice. ECF No. 22 at 22; ECF No. 30 at 19. "In consumer cases, the Ninth Circuit

11

"undeniably establishes only a wide standard to guide courts." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 181 (1999). However, "[a]lthough the unfair competition law's scope is sweeping, it is not unlimited. Courts may not simply impose their own notions of the day as to what is fair or unfair." *Id.* at 182.

Visa's policy and practice is not unfair as described by the UCL. Williams's claim fails under the balancing test because he does not allege that Visa's conduct was unethical in more than conclusory terms.[3] *Lesley v. Ocwen Fin. Corp.*, No. SA CV 12-1737-DOC, 2013 WL 990668, at *7 (C.D. Cal. Mar. 13, 2013). Although Williams alleges that Visa enforces the Visa Rules unevenly, the Rules were not enacted for Williams's benefit (or for the benefit of consumers generally), as the Court has already held. Moreover, Visa is not required to have *any* policy regarding debit card surcharges. When merchants follow the policy Visa does have, or when Visa enforces it, Williams receives a benefit he otherwise would not. Thus, there is no consumer injury against which to balance Visa's reasons, justifications or motives.

Williams fares no better under the tethering test. "In order for a claim to be 'sufficiently "tethered" to a legislative policy for the purposes of the unfair prong,' there must be a 'close nexus between the challenged act and the legislative policy.'" *Ajzenman v. Off. of Comm'r of Baseball*, 492 F. Supp. 3d 1067, 1081 (C.D. Cal. 2020) (quoting *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018)). "[Williams] ha[s] not identified any legislative policy [Visa] ha[s] violated." *Id.*

---

has declined to apply the FTC standard absent a clear holding from the California Supreme Court, but it has approved the use of either the balancing or tethering tests." *Day v. GEICO Cas. Co.*, No. 21-CV-02103-BLF, 2024 WL 1244481, at *5 (N.D. Cal. Mar. 21, 2024) (citations omitted); *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1027 n.5 (N.D. Cal. 2016) (holding that the FTC Section 5 test "does not apply in consumer cases, and therefore is inapplicable"), *aff'd*, 891 F.3d 857 (9th Cir. 2018); *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007); *but see Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 880 (2017) (stating that "in this court, the test for determining whether a business practice is unfair in consumer cases arising under the UCL is the same as that used under section 5 of the Federal Trade Commission Act"). The Court does not apply the FTC Section 5 test.

[3] "Defendant's acts, omissions, and conduct violate the unfair prong of the UCL because Defendant's acts, omissions, and conduct, as alleged herein, offended public policy and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiffs and other Class Members. The gravity of Defendant's conduct outweighs any potential benefits attributable to such conduct and there were reasonably available alternatives to further Defendant's legitimate business interests, other than Defendants' conduct described herein." ECF No. 1 ¶ 71.

The Court finds that Williams has not adequately alleged that Visa's practices are unfair.

### D. Declaratory and Injunctive Relief

Visa argues that, because Williams fails to state a claim for breach of third-party beneficiary contract, his claim for declaratory and injunctive relief also must be dismissed. ECF No. 22 at 26–27; *see Iron Bridge Mortg. Fund LLC*, 539 F. Supp. 3d 1030, 1039 (N.D. Cal. 2021) ("Iron Bridge's attempt to rely on . . . a third-party beneficiary theory is unavailing. There is not an actual controversy involving a written agreement between Iron Bridge and BofA for this court to adjudicate. Iron Bridge's claim for declaratory relief is dismissed"). Williams agrees that his "entitlement to injunctive and declaratory relief is dependent on the viability of the other claims he has alleged." ECF No. 28 at 16. Since, as explained above, the Court dismisses Williams's claims for breach of third-party beneficiary contract and violation of the UCL, the Court likewise will dismiss Williams's claim for declaratory and injunctive relief.

### CONCLUSION

For the foregoing reasons, the Court grants Visa's motion to dismiss. The Court grants Williams leave to amend solely to cure the deficiencies identified in this order. Any amended complaint shall be filed within 28 days.

**IT IS SO ORDERED.**

Dated: May 28, 2025



JON S. TIGAR
United States District Judge