UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES WILLIAMS,

               Plaintiff,

     v.

VISA, INC.,

            Defendant.

Case No. 24-cv-08708-JST

**ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT**

Re: ECF No. 43

Before the Court is Defendant Visa Inc.'s motion to dismiss the Amended Class Action Complaint. ECF No. 43. The Court will grant the motion.

## I.     BACKGROUND

For the purpose of deciding this motion, the Court accepts as true the following allegations from Plaintiff James Williams's amended complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Visa is a California-based digital payment company that facilitates transactions between consumers, merchants, financial institutions, and government entities. ECF No. 38 ¶ 8. Visa enables electronic payments through Visa-branded credit, debit, and prepaid cards. *Id.* ¶ 9. Cardholders can use Visa-branded cards to make purchases from merchants, which are carried out through a series of steps. *Id.* ¶¶ 11–16. Visa assesses a fee for each transaction, which for debit card transactions is 0.13% of the gross transaction amount. *Id.* ¶¶ 19–20. Consequently, the higher the price a consumer pays to a merchant, the more Visa receives. *Id.* ¶ 20.

Some merchants impose surcharges on consumer transactions "to compensate for some of the cost of payment processing." *Id.* ¶ 21. Visa's contracts with intermediary banks called "acquirers" require them to impose certain rules on merchants ("Visa Rules") which allow

surcharges for credit card purchases but prohibit them for debit card purchases ("No Surcharge Rule"). *Id.* ¶¶ 22–24, 27, 32.

Williams is a citizen of South Carolina. *Id.* ¶ 6. He alleges that "Visa does not enforce the No Surcharge Rule in a systematic or effective manner," and as a result, "merchants routinely impose such surcharges on consumers making purchases via debit card. This practice is widespread and indiscriminate. Visa knowingly permits it." *Id.* ¶¶ 32–33. Because the amount Visa collects as its debit assessment fee is a percentage of the gross transaction amount, Visa profits from merchant surcharges on debit card transactions, even though such surcharges violate Visa's own rules. *Id.* ¶ 34. "Plaintiff Williams has been repeatedly charged unlawful debit surcharges when using his Visa-branded debit card" to make purchases from various merchants in South Carolina. *Id.* ¶ 35–36.

On its website, Visa claims that it "is actively enforcing its surcharge policy." *Id.* ¶ 25. Its website claims that it identifies noncomplying merchants through consumer complaints and "yearly mystery shopping by outside auditors." *Id.* The intermediary banks serving "merchants who are caught violating Visa's rules[] face potential fines" and such banks as well as the merchants themselves are "subject to non-compliance assessment" according to the Visa Rules. *Id.* ¶ 25–26. Williams alleges that Visa managers responsible for merchant compliance are based in Foster City, California. *Id.* ¶¶ 29–31.

Finally, Williams alleges that he and other class members were not warned, did not reasonably expect, and were not otherwise made aware that they would be charged surcharges for paying with their Visa debit cards. *Id.* ¶¶ 39, 54–55, 59.

Williams filed this amended complaint on June 25, 2025 on behalf of himself and a putative class, asserting claims for (1) unjust enrichment, (2) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (UCL), and (3) declaratory and injunctive relief. Visa moved to dismiss. ECF No. 43. Williams opposes the motion, ECF No. 45, and Visa has filed a reply, ECF No. 46. The Court held a hearing on December 4, 2025.

## II.    JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332(d).

United States District Court
Northern District of California

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  While a complaint need not contain detailed factual allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter to, when accepted as true, state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged."  *Id.*  While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotation marks and citation omitted).

In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff.  *Knievel*, 393 F.3d at 1072.  "Dismissal under Rule 12(b)(6) is appropriate . . . where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

### IV.    DISCUSSION

Visa challenges each of Williams's three claims.  The Court addresses each claim in turn.

#### A.    Unjust Enrichment

Williams argues that Visa was unjustly enriched because it received a portion of the prohibited debit surcharges in collecting the debit assessment fee, which is calculated as a percentage of the total transaction amount.  ECF No. 38 ¶ 58.

As the Court explained in its prior dismissal order, California cases disagree as to whether unjust enrichment is a standalone cause of action or a justification for quasi-contractual restitution.  *Compare Pro. Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 29 Cal. App. 5th 230, 238 (2018) *with City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 477–78 (2022).  Regardless of

3

1    whether the claim is labeled unjust enrichment or restitution, a plaintiff must allege the same two

2    elements: "receipt of a benefit and unjust retention of the benefit at the expense of another."

3    *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).  "[T]he benefit that is the basis of a

4    restitution claim may take any form, direct or indirect."  *Pro Tax Appeal*, 29 Cal. App. 5th at 238

5    (citing Restatement (Third) of Restitution and Unjust Enrichment § 1, cmt. d. (Am. L. Inst. 2011)).

6    "The person receiving the benefit is required to make restitution only if the circumstances are such

7    that, as between the two individuals, it is *unjust* for the person to retain it."  *Welborne v. Ryman-*

8    *Carroll Found.*, 22 Cal. App. 5th 719, 725 (2018) (emphasis in original) (citation omitted).  The

9    obligation to provide restitution "arises when the enrichment obtained lacks any adequate legal

10   basis and thus cannot conscientiously be retained."  *Russell v. Walmart, Inc.*, 680 F. Supp. 3d

11   1130, 1133 (N.D. Cal. 2023) (quoting *Hartford Casualty Ins. Co. v. J.R. Marketing, L.L.C.*, 61

12   Cal. 4th 988, 998 (2015)) (internal quotation marks omitted).

13        In his amended complaint, Williams did not cure the deficiencies the Court identified in its

14   prior dismissal order.  *See* ECF 43 at 11.  Namely, Williams has not pled that Visa's retention of

15   the benefit—the full debit assessment that it charged intermediary banks—was wrongful.  *See*

16   ECF No. 33 at 8–9.  Williams has still failed to identify any duty that Visa owed to Williams to

17   prevent merchants from imposing debit surcharges.  This conclusion is not affected by the fact that

18   Visa "represent[s] to the public" that it enforces its Rules.  *See* ECF No. 38 ¶ 58.  As Visa argues,

19   Williams does not allege that Visa promised to secure merchant compliance.  ECF No. 43 at 12.

20   Rather, Visa's materials state that the intermediary banks serving merchants "who are caught" face

21   "potential" fines.  ECF 38 ¶ 25.

22        In his amendments to the complaint, Williams inserted allegations that consumers were not

23   notified that they would be subjected to a surcharge, and that they did not expect such a surcharge

24   given the nature of debit transactions compared to credit transactions.  ECF No. 38 ¶¶ 39, 54–55,

25   59.  But these new allegations do not inform the wrongfulness of *Visa's* conduct because Williams

26   does not plausibly allege that Visa had a duty to make customers aware of surcharges imposed by

27   merchants, with whom Visa did not contract directly, in contravention of Visa's own rules.  While

28   these new allegations may show that the fees imposed were unjust—a question the Court does not

resolve—they do not show that Visa acted unjustly in retaining the full assessment that it charged intermediary banks.

Indeed, like the original complaint, Williams's amended complaint does not meaningfully allege that Visa knew merchants were imposing or would impose debit surcharges. Although Williams alleges that Visa "deliberately chose to permit" surcharge fees and "turn[ed] a blind eye to" them, *see* ECF No. 38 ¶¶ 33, 58, these conclusory allegations are unsupported by any facts making them plausible. Although the complaint references consumer complaints and random audits, Williams does not allege that Visa learned through these mechanisms about any merchants that applied debit surcharges. *See* ECF No. 38 ¶ 25. And regardless of whether Visa was generally aware of the surcharge practice—and it must have been, since it enacted a rule to forbid it—Williams does not allege, plausibly or otherwise, that Visa was aware of any particular instance of such surcharges. This dooms Williams's unjust enrichment claim. *See California Fed. Bank v. Matreyek*, 8 Cal. App. 4th 125, 133–34 (1992).

Williams argues that he need not show a "legal entitlement to enforcement of the Visa Rules" as long as he can show "a legal entitlement to recover unjustly retained benefits." ECF No. 45 at 6. But he has not adequately alleged that any portion of Visa's debit assessment was unjustly retained. Courts have often concluded that a plaintiff can only recover in unjust enrichment from a defendant who "has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Russell*, 680 F. Supp. 3d at 1133 (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)); *see Doe I v. Google LLC*, 741 F. Supp. 3d 828, 849 (N.D. Cal. 2024). Visa did not receive a benefit through one of those means, but validly, pursuant to its contracts with the intermediary banks that process merchant-consumer transactions. *See* ECF No. 38 ¶¶ 1, 20, 32.

Moreover, Williams' claim for unjust enrichment requires Visa to have retained a benefit *at Williams' expense*. *See Lectrodryer*, 77 Cal. App. 4th at 726 (defining unjust enrichment as "receipt of a benefit and unjust retention of the benefit *at the expense of another*" (emphasis added)); *Welborne*, 22 Cal. App. 5th at 725 (requiring restitution "only if the circumstances are such that, *as between the two individuals*, it is unjust for the person to retain it" (emphasis added)).

Williams identifies the relevant benefit as the portion of the 0.13% debit assessment that is attributable to debit surcharge fees. ECF No. 38 ¶ 58. But Williams has not alleged that he has been harmed by Visa's retention of those fees. Rather, he alleges that he has been harmed by Visa's nonenforcement of the Visa Rules. These rules permit Visa to penalize acquirer banks financially when those banks' merchant customers violate Visa's prohibition on debit card surcharge fees. But their enforcement does not result in the return of the surcharge fee to the consumer by the merchant. In other words, while Visa's nonenforcement of its rules may increase the fees Visa receives from acquirer banks, and indirectly allow merchants to overcharge Williams, those fees are not received "at the consumer's expense."

In simplified terms, Williams paid a merchant for goods, the merchant paid a fee to an intermediary bank for facilitating the transaction, and Visa assessed a fee calculated as a percentage of the transaction amount. ECF No. 38 ¶¶ 10–16, 20–21. The only connection between the benefit Williams conferred and the benefit that Visa received is that the latter is calculated in part based on the former. Williams's claims are not truly restitutionary because he does not allege that he incurred any additional cost because of the 0.13% debit assessment charged and retained by Visa. Rather, he seeks damages for harm incurred by Visa's failure to enforce its own rules. But, even if enforcement of those rules would provide some benefit to Williams, and as set forth more fully below, he has shown no duty or entitlement sufficient to require Visa to enforce those rules.

Visa's motion to dismiss Williams's unjust enrichment claim is granted.

### B.    Violation of UCL

Williams argues that Visa violated the UCL by failing to prevent merchants from imposing debit surcharges. ECF No. 38 ¶ 67. Visa contends that Williams fails to state a claim under California's UCL because he fails to show that he has standing under the UCL or that Visa's alleged conduct was unfair.

#### 1.    Extraterritorial Application

"[E]xtraterritorial application of the UCL is improper where non-residents of California raise claims based on conduct that allegedly occurred outside of the state." *Parkinson v. Hyundai*

*Motor Am.*, 258 F.R.D. 580, 598 (C.D. Cal. 2008).  Visa contends that Williams, a South Carolina resident who alleges that South Carolina merchants charged him surcharges not permitted by the Visa Rules, does not have standing to bring a UCL claim.  ECF No. 43 at 14–15.  Williams, meanwhile, asserts that the relevant wrongful conduct—Visa's decision not to enforce the No Surcharge Rule—occurred in California.  *See* ECF 45 at 15.

In this Court's prior dismissal order, it noted that Williams's allegations are insufficient to show standing to bring a UCL claim because although it was "possible that the decision" to engage in wrongful conduct occurred in California, there were no "additional facts" suggesting that Visa actually made the alleged nonenforcement decision from California.  ECF No. 33 at 10 (quoting *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1056 (N.D. Cal. Jan. 9, 2013)).  In his amended complaint, Williams identifies two specific Visa executives based in California who are responsible for Visa Rules enforcement and compliance.  *See* ECF No. 38 ¶¶ 29–31.

In opposition, Visa persuasively cites the decision by another court in this district in *Young v. ByteDance Inc.*, No. 22-CV-01883-VC, 2023 WL 3484215, at *7 (N.D. Cal. May 15, 2023), which Williams does not meaningfully distinguish.  *See* ECF 43 at 15; ECF 45 at 16.  In *Young*, the plaintiffs worked for a content moderation firm under contract with TikTok to review and remove videos flagged as inappropriate by users.  *Id.* at *1.  The plaintiffs sued TikTok for requiring them to view videos showing violence, sexual abuse, and other disturbing content (1) without breaks, (2) without sufficient ability to avoid certain subject matter, (3) without filters or editing to mitigate the harmful impact of the videos, and (4) at a "punishing" daily rate.  *Id.* at *1–2.  Although the court found that the plaintiffs had stated a claim for negligence, it concluded that they could not state a claim under the UCL because although "TikTok 'oversaw' the content moderation from California, that conduct alone is not enough to justify expanding the UCL to cover these circumstances" given that the plaintiffs' work was performed outside of California and the alleged injuries occurred outside of California.  *Id.* at *7.  In both *Young* and this case, while the problematic decisions were allegedly made in California, the implementation of those decisions was entirely out-of-state.

While Williams alleges that Visa's Rules Compliance team is located in California, that

1   team's policy and enforcement decisions do not confer standing under the UCL where Williams

2   was injured outside of California by merchants located outside of California.

### 2.    Cognizable Injury & Causation

4       To bring a UCL claim, the plaintiff must establish that he "has suffered injury in fact and

5   has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.

6   Thus, the plaintiff must "(1) establish a loss of deprivation of money or property sufficient to

7   qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the

8   result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of

9   the claim."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (emphasis in original).

10  Among other means, economic injury from unfair competition may be shown if the plaintiff

11  "surrender[s] in a transaction more, or acquire[s] in a transaction less, than he or she otherwise

12  would have."  *Id*. at 323.  Courts have repeatedly found undisclosed or unjustified fees to

13  constitute such an economic injury.  *See, e.g.*, *Sepanossian v. Nat'l Ready Mixed Concrete Co.*, 97

14  Cal. App. 5th 192, 205–06 (2023) (holding that the plaintiff stated a claim for unfair business

15  practices under the UCL where the defendant imposed on its concrete sales "energy" and

16  "environmental" fees which served no energy or environmental purposes and which the customer

17  could not avoid); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 931 (N.D. Cal. 2013) (finding

18  that payment of unlawful fees is "an economic injury that qualifies as injury-in-fact");

19  *Baghdasarian v. Amazon.com, Inc.*, 258 F.R.D. 383, 385, 387 (C.D. Cal. 2009) (finding that

20  payment of deceptive "shipping and handling fees" constituted a financial injury under the UCL

21  even if the plaintiff could not have secured a lower total price elsewhere).  Williams alleges that he

22  was injured because Visa's failure to enforce its rules led him to pay unjustified and undisclosed

23  surcharges on his debit transactions.  *See* ECF No. 38 ¶ 67–68.  He has therefore alleged a

24  cognizable injury for the purpose of UCL standing.

25      Visa cites two cases in which "courts . . . dismissed UCL claims premised on an entity's

26  alleged failure to enforce its own policies on the basis that compliance with that policy was not an

27  agreed-upon benefit of the consumer's transaction."  ECF 43 at 16 (citing *Ginsberg v. Google Inc.*,

28  586 F. Supp. 3d 998 (N.D. Cal. 2022) and *Woods v. Google, Inc.*, 889 F. Supp. 2d 1882 (N.D. Cal.

United States District Court
Northern District of California

2012)).  In its prior order, the Court agreed with Visa and concluded that the reasoning of those cases precluded Williams from establishing a UCL injury.  *See* ECF No. 33 at 10.  In his opposition to Visa's motion to dismiss the amended complaint, Williams again fails to distinguish these cases.  In revisiting the issue, however, the Court concludes that Visa's authorities do not defeat the cognizability of Williams's injury.  *Woods v. Google* is relevant but will be discussed in a later section of the order because it speaks to the unfairness of Visa's conduct rather than the cognizability of Williams's injury.

*Ginsberg v. Google* does not apply.  In that case, the plaintiff alleged that Google caused him emotional distress by making available through its app store an app called Telegram that allegedly hosted hate speech.  586 F. Supp. 3d at 1002–03.  He alleged that this violated Google policies providing that apps with "a reputation among users of being a place where [objectionable] content thrives" would be removed from its app store.  *Id*. at 1002.  In alleging that Google violated the UCL, the plaintiff claimed that he incurred an economic injury because part of the cost of the phone accounted for the benefits provided by Google's policies.  *Id*. at 1007.  The court rejected the UCL claim because the plaintiff had not "alleged facts showing that Google's compliance with its developer guidelines was an agreed-upon benefit of the phone purchase transaction."  *Id*. at 1007–08.

*Ginsberg* is unlike Williams's case because in *Ginsberg*, the economic injury was only the cost of the phone, which could not constitute an injury if the plaintiff got what he bargained for.  In Williams's case, however, the asserted economic injury is the payment of allegedly improper and undisclosed fees.  Williams argues that he was overcharged because of those fees, *see* ECF No. 38 ¶ 68, and therefore did not receive the benefit of the bargain at all.  Williams has alleged a cognizable economic injury under the UCL.

### 3.    Unfairness

The UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent.  "Each prong of the UCL is a separate and distinct theory of liability."  *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  Williams is proceeding under the "unfair" prong of the UCL.  ECF No. 38 ¶¶ 67, 71.

9

"The UCL does not define the term 'unfair' as used in Business and Professions Code section 17200," *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1364 (2010), but the Ninth Circuit has recognized two tests for identifying an "unfair" business practice in consumer cases. "The first, a balancing test, involves an examination of the allegedly unfair practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Donadio v. Hyundai Motor Am.*, 751 F. Supp. 3d 1013, 1022 (C.D. Cal. 2024) (citation modified). This test asks "whether the alleged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum v. San Fernando Valley Bar Assn.*, 182 Cal. App. 4th 247, 257 (2010) (quotation omitted). The unfairness balancing test is "intentionally broad." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999). The second is the "tethering test," which "requires 'that the public policy which is a predicate to [a consumer unfair competition action under the "unfair" prong of the UCL] must be "tethered" to specific constitutional, statutory or regulatory provisions.'" *Donadio*, 751 F. Supp. 3d at 1023 (quoting *Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*, 9 Cal. 5th 279, 303 n.10 (2020)).[1]

In the Court's prior order dismissing the complaint, it explained that Williams's claim fails because he does not allege that Visa's conduct was unfair in more than conclusory terms. ECF 33 at 12. Like the complaint, the amended complaint does not allege with any specificity that Visa knew merchants were violating the No Surcharge Rule or deliberately allowed them to continue to do so. Even if it had, it does not allege that Visa had an obligation to ensure perfect compliance with its Rules; in fact, Visa's representations and Rules promise some compliance efforts but

---

[1] A third test of unfairness comes from "the three-part definition of unfairness applied under section 5 of the FTC Act since 1980, namely that: (1) The consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Nationwide Biweekly*, 9 Cal. 5th at 303 n.10 (quotation omitted). "In consumer cases, the Ninth Circuit has declined to apply the FTC standard absent a clear holding from the California Supreme Court, but it has approved the use of either the balancing or tethering tests." *Day v. GEICO Cas. Co.*, No. 21-CV-02103-BLF, 2024 WL 1244481, at *5 (N.D. Cal. Mar. 21, 2024) (citations omitted). The Court therefore does not apply the FTC Section 5 test.

10

emphasize that intermediary banks of merchants *who are caught* face *potential* fines.  ECF No. 38 ¶ 25.  The complaint also identifies the means through which Visa states that it conducts compliance efforts without alleging that it fails to utilize those means.  *Id*. (referencing "consumer complaints" and "a yearly mystery shopping by outside auditors").

In *Woods v. Google*, another court in this district found that the plaintiff had failed to allege unfairness under similar circumstances.  That case concerned a Google program called AdWords, through which advertisers display advertisements on google.com and other websites, paying Google a fee each time an internet user clicks the ad.  889 F. Supp. 2d at 1187.  Woods, the plaintiff, joined AdWords by accepting its terms, which stated that they "constitute[] the entire and exclusive agreement between the parties with respect to the subject matter" and that "[n]o statements or promises have been relied upon" except those set forth in the agreement.  *Id*.  He alleged, however, that Google represented to AdWords advertisers that all websites would be "reviewed and monitored according to Google's rigorous standards," including certain policies (the "AdSense Policies") dictating how and where Google's publishers may display AdWords ads.  *Id*. at 1188–89.  Woods alleged that Google failed to enforce these policies with its website publishers, leading advertisers like him "to pay for accidental and meaningless clicks that are worth less than what Google charged for them."  *Id*. at 1189.  The court held that Woods had not alleged unfairness under the UCL because he pleaded no facts showing that Google owed him an obligation to enforce its AdSense Policies.  *Id*. at 1195.

While Woods had a contract with Google, Williams does not allege that he had a contract with Visa.  And Williams, like Woods, did not plead facts showing that Visa owes him an obligation to enforce its policies, even though Visa allegedly represents to the public that it will do so.  The Court finds *Woods* persuasive in defeating Williams's claim of unfairness under the UCL.

In amending his UCL claim to address the court's prior determination concerning the unfairness prong, Williams only adds allegations that consumers did not expect and were not warned that they would be charged debit surcharges.  *See* ECF No. 38 ¶¶ 71.  The fact that merchants failed to disclose debit surcharges to consumers does not affect the court's conclusion with respect to the unfairness of Visa's conduct.  As the court explained above, these allegations

1    may establish wrongful conduct by the merchants, but do not establish that Visa acted unfairly

2    without specific allegations that Visa knew that merchants were applying undisclosed surcharges

3    or was obligated to stop them from doing so.  Williams's response to the motion to dismiss only

4    reinforces the Court's conclusion:  Citing to *Baghdasarian v. Amazon*, *Sepanossian v. Nat'l Ready*

5    *Mixed Concrete*, and other cases, Williams argues that the surcharge fees were unfair because they

6    were undisclosed and unjustified.  ECF No. 45 at 11.  He also argues that the debit surcharges are

7    unfair under the tethering test because they violate a California anti-surcharge policy.  *Id.* at 12–

8    13.  But neither argument speaks to the unfairness of *Visa's* conduct.

9    　　　The Court finds that Williams has not adequately alleged that Visa's practices are unfair.[2]

10   　　**C.    Declaratory and Injunctive Relief**

11   　　　Williams seeks declaratory relief under the Federal Declaratory Judgment Act, which

12   authorizes the Court, "[i]n a case of actual controversy within its jurisdiction," to "declare the

13   rights and legal relations of any interested party seeking such declaration."  ECF No. 38 ¶ 74; 28

14   U.S.C. § 2201(a).  He also seeks injunctive relief, which, like declaratory relief, is a remedy rather

15   than a cause of action.  *Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1161 (N.D. Cal. 2020),

16   *aff'd*, 857 F. App'x 907 (9th Cir. 2021) (citing *Ivanoff v. Bank of America, N.A.*, 9 Cal. App. 5th

17   719, 734 (2017)).  Williams acknowledges that his "entitlement to injunctive and declaratory relief

18   is dependent on the viability of the other claims he has alleged."  ECF No. 45 at 17.  Because the

19   Court dismisses Williams's claims for unjust enrichment and violation of the UCL, the Court

20   likewise will dismiss Williams's claim for declaratory and injunctive relief.

21   　　　　　　　　　　　　　　　　　**CONCLUSION**

22   　　　For the foregoing reasons, the Court grants Visa's motion to dismiss.  Dismissal is without

23   leave to amend.  *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008) (finding

24   amendment would be futile where plaintiff still failed to state a claim after having been granted

25   _____

26   [2] Williams argues that unfairness should not be decided on a motion to dismiss because it is a
     question of fact that requires weighing of evidence.  ECF No. 45 at 13–14.  But Williams conflates
27   pleading sufficiency with the merits.  Because the Court concludes that all of the facts alleged in
     Williams's complaint, taken as true, do not state a claim for unfair business practices under the
28   UCL, resolution on a motion to dismiss is appropriate. *See Knievel*, 393 F.3d at 1072; *Mendiondo*,
     521 F.3d at 1104.

United States District Court
Northern District of California

leave to amend).

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated:  December 12, 2025

_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California